146 143
f151 ¹667

BELD v. DARST.

1. EVIDENCE — WRITTEN CONTRACT — ORAL EVIDENCE — VARYING TERMS.
   Plaintiff, when approached by defendant for the purpose of inducing him to enter into a contract to raise onions on shares, declined because he was unable to provide the necessary cribs and warmhouses, and thereupon defendant expressly agreed to build them. Before signing the writing, plaintiff called defendant's attention to the fact that, while the writing referred to cribs and warmhouses on defendant's premises, yet defendant's premises contained none, and was thereupon assured by defendant that he would place such buildings there. Held, that the written agreement clearly did not contain the entire contract of the parties, and oral testimony was admissible to prove what the whole contract was.

2. STATUTE OF FRAUDS—APPEAL—QUESTIONS CONSIDERED.
   The point that the contract was void under the statute of frauds, because not to be performed within a year, being first raised in this court, cannot be considered.

HOOKER and GRANT, JJ., dissenting.

Error to Newaygo; Palmer, J. Submitted February 6, 1906. (Docket No. 100.) Decided October 29, 1906.

Case by John H. Beld against Warren Darst for breach of a contract for the raising of a certain crop. There was judgment for plaintiff, and defendant brings error. Affirmed.

*George Luton*, for appellant.

*Martin Rozema*, for appellee.

BLAIR, J. On the 2d of September, 1902, the plaintiff and the defendant entered into an agreement whereby the plaintiff agreed to put in, care for, harvest, and sell, if directed so to do, a crop of onions on the lands of defendant. The basis of the agreement between the parties was

a written contract between the defendant and other parties for the raising of onions and potatoes on lands of defendant in Indiana, upon which the contract stated there were certain buildings, which were not present on the Michigan lands, and there were provisions of the written contract which were inapplicable to the Michigan lands. Plaintiff, when approached by defendant for the purpose of inducing him to enter into a contract to raise onions on shares, expressly told defendant that he could not enter into such a contract, because he was unable to provide the necessary cribs and warming houses, and thereupon defendant expressly agreed to build them. Before signing the writing, plaintiff called defendant's attention to the fact that, while the writing referred to cribs and warming houses on the premises, yet defendant's premises contained none, and was thereupon again assured by defendant that he would place such buildings there.

Plaintiff commenced work under the contract in the spring of 1903 as soon as the weather permitted, and put in 10 acres of onions. During the summer plaintiff urged defendant several times to put up the necessary cribs and warming houses, as he had agreed to do. Defendant assured him that he would. Plaintiff paid out for hired help between $200 and $300. Defendant advanced the money necessary to pay the hired help up to the time of the topping and pulling, but refused to do so after that. Plaintiff commenced pulling and topping the onions about the middle of August, and had it done in good season. The onions were in good condition. After the crates were filled, they were dumped in 10-bushel piles in the field. Plaintiff had no other place to put them. He sent word to defendant, but it was almost two weeks before he came, and then only provided an old barn, which was wholly inadequate and unsuited for plaintiff's needs. All this greatly delayed the work, and occasioned much extra labor and expense. No proper place for curing and storing the crop being provided, plaintiff was obliged to hurry as many as possible to market in an unsatisfactory condi-

tion. The total amount of onions raised was about 6,000 bushels, but on account of the want of the proper facilities for handling the crop advantageously, the plaintiff was only able to get about one-half of it to market. Those marketed were sold for 35 cents a bushel. The rest were frozen, and became a total loss. The extra expense on the onions marketed caused by the lack of suitable cribs and warming houses was at least 5 cents a bushel. The market price of onions in the fall of 1903 was between 33 and 40 cents.

It is contended by defendant that the writing embraces the entire contract between the parties, and that the court erred in permitting oral evidence to vary or modify the contract; that the contract, if partly resting in parol, was void because not to be performed in one year; that plaintiff counted upon the written contract, and should have been restricted to it.

The written agreement in this case clearly does not contain the entire contract of the parties, and the trial judge very properly admitted oral testimony to prove what the whole contract was. *Stahelin* v. *Sowle*, 87 Mich. 124.

The point that the contract was void under the statute of frauds, because not to be performed within a year, is raised for the first time in this court, and cannot be considered. The declaration did not count upon the agreement as in writing, but as it was claimed to be upon the trial. The assignment of error is based upon a misapprehension of fact.

We have considered all of the errors relied upon for a reversal, and find none calling for a reversal.

The judgment is affirmed.

CARPENTER, C. J., and MCALVAY, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred with BLAIR, J.

HOOKER, J. (*dissenting*). The parties to this cause, or some of them, undertook to contract for the leasing of premises to be cropped on shares. The contract was in writing, as required to be by the statute of frauds, be-

cause it could not be performed within one year. The writing consisted of a contract, or copy of a contract, made previously, relating to lands in Indiana, described, "and any other lands farmed by second party on premises of first party," between the defendant and third persons, to which these parties appended their contract. It is as follows:

"This lease made this twenty-seventh day of January, 1900, between Warren Darst, first party, and Mike and Henry Mortimore, second party, witnesseth that said first party does by these presents to farm let to said second party for one year beginning March 1, 1900, and continuing till February 28, 1901, the following described lands: Lands of said first party in Jefferson township, Kosecwinsko county, Ind. Any other land farmed by said second party on premises of said first party shall come under the conditions of this lease.

"Said first party agrees to furnish one-third of the seed potatoes and one-half of the onion seed planted by said second party on said lands, and said second party agrees to furnish two-thirds of the seed potatoes and one-half of the onion seed so planted, and to furnish all teams, tools, and all other articles necessary for the proper farming of said lands and the proper caring for all crops raised thereon till sold; to farm said lands and raise all crops in a proper manner to the best of his ability; to harvest, gather in, and care in person for all crops in proper manner till sold; to deliver them when sold or consigned promptly and without delay in good merchantable condition on board cars at railroad station, from which they can be shipped to the best advantage for marketing. The parties shall mutually assist each other with advice and information in selling said crops. Said first party reserves the right to sell all of each of said crops and receive the pay therefor. Said second party agrees to sell as much of each of said crops as said first party shall direct in writing. Each party shall account to the other for all money or other property received by him from the sale of said crops, and in the division of said income said first party shall receive one-third and said second party shall receive two-thirds.

"All said crops shall be weighed when sold or used on the scales on the premises of said first party by a weighmaster to be selected by said first party, and paid one-

third by said first party and two-thirds by said second party, and all said weights shall be recorded carefully by said weighmaster in a suitable book to be furnished by said parties; said book to be carefully kept by said weighmaster till delivered by him to said first party at his request.

"Said second party agrees not to farm any land not included in the above-described premises, nor to allow any one living in house furnished by said first party to farm any land not so included, nor to sublet or sublease any of said lands or any buildings furnished by said first party. Said first party reserves the right to allow other parties the use of said buildings when not needed by said second party.

"If any of the conditions of this contract shall be broken or not fulfilled by said second party, said first party shall receive immediate possession of said lands, building, and crops, to possess, care for, dispose of, and enjoy them. Any expense or damage falling on said first party by reason of said breaking or nonfulfillment of said contract shall be restored and paid to him by said second party.

"Said second party agrees to take good care of buildings furnished by said first party; to pay damages to said buildings resulting from carelessness, neglect, or misuse, to haul out and use on said lands all manure made thereon; not to remove or allow to be removed from said premises any straw or manure; not to allow any manure to lie against the barn, nor to allow scales, warmhouses, cribs, or dwellings to be used by any other person; nor to allow other parties the right of way on or over said lands.

"Said first party agrees to furnish said second party money to pay for his half of the onion seed, and money for necessary expenses for tending crop in hired labor, for which said second party is to give his promissory note, to be paid from his share of the income received from the first produce sold from said crop, and said debt shall be a lien on said share of said crops.

"Said second party agrees to move refuse from said crops at least 25 or 30 rods from cribs or warmhouses. The claims of said first party arising from any money advanced to said second party by said first party to pay for said second party's share of seed, tending crops, or other purpose, shall be a lien on said second party's share of said crops, and shall be paid to said first party out of said sec-

ond party's share of the income from the sale of the first of said crops sold.

"WARREN DARST.
"MIKE MORTIMORE.
"HENRY MORTIMORE."

"Grant Township, Newaygo Co., Mich.

"We, the undersigned, adopt this contract for ourselves for lands of said first party in Newaygo Co., Grant township, Mich., except part referring to scales and manure, and Mr. Martin Van Duine and Mr. Wiltse Beld, second parties, are to have the privilege of farming their own land cleared.

"Signed this 2d day of September, 1902, for the season of 1903 to 1904.

"WARREN DARST.
"MARTIN VAN DUINE.
"WILTSE BELD."

"We, the undersigned, adopt the contract of Mr. Van Duine and Mr. Wiltse Beld.

"Signed this second day of September, 1902.

"WARREN DARST.
"JOHN H. BELD."

Possession was taken and crops raised and disposed of, and the plaintiff Beld afterwards brought this action, claiming damages resulting from defendant's alleged failure to provide buildings suitable and necessary to the cribbing, curing, and storing onions, and received a judgment, from which the defendant has appealed.

Plaintiff's counsel claim that plaintiff had the right to show a contemporaneous agreement to supply said building. It is based on what is said about buildings in the Indiana contract. The court permitted plaintiff to show under the claim that the contract was partly writing and partly in parol; that at the time the bargain was made and the writing executed, he called the defendant's attention to the fact that the lands in contemplation had no buildings on them suitable for cribbing, curing, and storing onions, and he did not care to sign it; whereupon, defendant said he would see that the buildings were there if plaintiff would raise the onions. This testimony came in under the objection that it was incompetent, be-

cause the contract was in writing, and afterwards the court was asked to direct a verdict for defendant on the ground that "the court should not have permitted oral testimony to change or vary the written contract, and virtually to make an entire new contract."

It is clear that the contract was not to be performed within one year, for it could not be so performed, if the land should be farmed in a proper manner, crops harvested, cured, and sold before September 3, 1903, to say nothing of the provisions that the lessee should have possession of the lands, and should care for them for the period of his lease, and not sublet, etc. We have held that such contracts cannot be varied by parol contracts or stipulations not in writing even though subsequent to the making of the first contract. See *Abell* v. *Munson*, 18 Mich. 306; *Cook* v. *Bell*, 18 Mich. 387; *McEwan* v. *Ortman*, 34 Mich. 325; *Barton* v. *Gray*, 57 Mich. 635. It is said this point was not made below, but we think it covered by the request to charge, if it can be said that the objection was not sufficiently specific.

If the statute of frauds were not fatal to this case, we should think that the contract was not one which can be said to have rested partly in writing and partly in parol, as contended by plaintiff's counsel. The testimony of the plaintiff shows what appears on the face of the instrument also, i. e., that the parties undertook to put their engagement in writing, and it was signed deliberately by the plaintiff without correction or change after calling attention to the omission of the subject of buildings. No rule is better settled than that the promise made orally at that time cannot be shown as part of the contract.

The rule that a latent ambiguity may be explained would not admit of such evidence. No one has raised the question of latent ambiguity in connection with this case, but we will discuss it. If we can legitimately infer that the parties agreed that the defendant was to furnish a farm with buildings for cribbing, curing, and storing onions upon the place, and there were no such buildings

on the place, there might be room for the claim that there was a latent ambiguity, and the plaintiff might show the circumstances surrounding the transaction to explain the writing and to aid in its interpretation. But such evidence must be consistent with the terms of the writing, and evidence tending to contradict, vary, or add to the writing, thereby lessening the defendant's rights or increasing his obligations under it would not be admissible. The contract made for land in Indiana did not bind defendant to furnish suitable buildings for cribbing, curing, or storing onions. It provided for leasing a particular farm. It is inferable that there were some buildings upon the farm, but the only engagements concerning them were the right of the tenant to use such as there were; his promise not to let the person who might live in the house farm any other land; not to sublet any of the buildings; to pay damages for misuse of buildings; to not allow any manure to lie against the barn; nor to allow some of them to be used by any other person; and to remove refuse from crops 25 rods or more from such buildings. That there was any obligation to provide such buildings is only inferable from their apparent presence on the farm let. In the contract sued upon there is no allusion to buildings, except as counsel argue that by adopting the Indiana contract the parties agreed that there were such on this farm, although it is conceded that both parties knew that there were none, except a shed and possibly a house, and there is no circumstance that tends to show that it was contemplated by either that this contract related to buildings, or provided that any should be constructed. If plaintiff's statements are true, this is no more than a case where he relied on a parol promise which he did not have put in the writing, and of which he cannot, therefore, avail himself. This contract expressly binds the plaintiff to raise, cure, care for, store, and market crops. He seeks by this evidence to impose a part of such burden upon the defendant, upon the claim that he agreed to construct buildings upon the place, and notwithstanding

the fact that he actually furnished buildings near by,
which plaintiff used, but which he says were unsuitable.
This is an attempt to alter and add to the writing by parol,
which the authorities generally hold cannot be done.

The judgment should be reversed, and we see no occa-
sion for a new trial. Defendant is entitled to a judgment
for costs of both courts.

GRANT, J., concurred with HOOKER, J.