ELECTRICAL APPLIANCE CO. v. STANDARD ELECTRIC CO.

1. EVIDENCE — WRITTEN CONTRACTS — VARYING BY PAROL — IN-
COMPLETE WRITING.
Where a writing does not embody all the terms of a contract,
it is competent to show an additional agreement by parol.

2. SAME.
Where defendant, with plaintiff's catalogue before it, wrote
an order for electrical appliances "on condition that you
guarantee these phones to us for one year," no further state-
ment as to the terms of the guaranty being made, and plain-
tiff accepted the order, the guaranty must be presumed to
have been made with reference to the guaranty printed in
plaintiff's catalogue, whence the terms of the contract were
not all expressed in the writing, and evidence of prior nego-
tiations was admissible.

Error to Wayne; Murphy, J. Submitted October 24,
1907. (Docket No. 130.) Decided March 31, 1908.

Assumpsit by the Electrical Appliance Company
against the Standard Electric Company for goods sold
and delivered. There was judgment for plaintiff, and
defendant brings error. Reversed.

*Van Zile & Brownson*, for appellant.
*Clark, Jones & Bryant*, for appellee.

MONTGOMERY, J. The defendant is an installing com-
pany at Detroit, and the plaintiff is a manufacturer of
electrical apparatus and appliances, whose office is at Cin-
cinnati. In the early part of 1904, the defendant was
negotiating a contract with the Detroit Stove Works to
supply and install in the plant of that company a tele-
phone system. At this time it evidently had before it the
catalogues issued by the plaintiff company. At any rate,
the testimony shows that it had such catalogues be-

fore the giving of the order in question in this case.   On
the 3d of February defendant wrote plaintiff asking it to
express a sample of its wall phones and of its desk
phones, stating:   " The reason we want these quickly by
express is that the Detroit Stove Works will settle their
telephone deal this week, and they will not give us the
order unless we submit samples," also asking advice as to
whether a long receiver could be used on plaintiff's
phones, adding:   "We are badly in need of catalogues.
Why can't you send us about 100 of these ? "

In reply to this, plaintiff sent defendant the two phones,
stating:   "You cannot use the long receiver, as you will
see when you get the phones.   There is no way of hang-
ing them on the hook, and if your parties are prejudiced
against the watch case receiver, it is probably because
they have gotten hold of some old style, not an up-to-
date watch case receiver which ours is," and adding, " It
is too late to get off the catalogues tonight, but we will
send them by express to you in the morning."

On the 11th of February, defendant wrote plaintiff as
follows:

"Kindly enter our order for immediate shipment for
the following goods:

"19–25 point inter-communicating wall telephones.

"2–25 point desk inter-communicating telephones.

" 3,000 feet No. 12 telephone cable, with triple cotton
insulation, for twenty-six stations.

." Five No. 31 type C glass jar storage batteries without
the oak cases.

"The wall phones are to have five inch gongs on them
as they will be installed in a noisy shop and a smaller
gong could not be heard.   These phones are to have the
general call system the same as is on the phones you put
in for the Triumph Electric Co., in Cincinnati.

"This order is placed with you on the condition that
you will guarantee these phones to us for the period of
one year as we have to make that guarantee to secure the
order, and we want you to protect us on it.   Will you
please advise us how quickly you will ship this order as
we are in quite a hurry for it."

The following day a bare acknowledgment of this order was made, and on the 16th the plaintiff wrote defendant as follows:

" We have your order and have entered same for immediate attention. We are glad to see you successful in your first estimate on our system and assure you of our desire to see you make some money out of it. We shall do our part in the matter and with good work of installation there will be no trouble in the outcome of the contract. We presume you understand how important good work is in telephony. A telephone current is so extremely weak and complicated in character that a little trouble apparently a small thing can destroy good service.

"We have a shipment of wire on the road from Chicago that will enable us to make your cable in one shipment. While you are getting this part of the work done we will get out the other parts of the system so that you will have them in ample time. We make the cable in 500 ft. rolls which is all that can be handled readily. We may have to give you shorter lengths on account of the size of the cable. In the meantime let us know what lengths would be advisable or rather desirable. We do not know how the system is laid out, whether long runs or shorter ones with many taps. It would be a good plan for you to send us a sketch showing relative positions of the stations.

" We note that your order calls for 25 point switches and 26 station cable. A 25 point switch will allow the use of 24 telephones and 'General Call.' The 'general call' device is placed near the battery and is connected to the 'general call' wire. We can give you 25 wire cable if you wish it, but 26 wires leaves you an extra in case of any trouble. Regarding 'general call,' Triumph have several gongs as signal on same, at the same time two of the phones ring. We can arrange this device to suit you. You can ring all the phones if you want to. We just completed a large system for the Baldwin Piano Co., here, 21 phones and they find it a good thing to ring all bells. Triumph thought it would be confusing and hence wanted gongs for the purpose almost exclusively. On the subject of gongs for the phones, we would suggest that you locate the noisy ones by 'home' number and supply gongs yourself. We will furnish the phone arranged for gong connections. You can buy the gongs as cheap as we can. It has been our experience that

there are few places where gongs are really required, and where required they are used in connection with the small bell.   We always put up the standard phone and then arrange the gongs as required afterwards, so let us know how many you wish with small bells and how many arranged to connect large ones.   We feel confident that you will find about 8 or 10 gongs more than enough for the noisy places.   The writer is somewhat familiar with the Stove Plant having lived in Detroit a number of years. It is best to fully understand all these points before going ahead, as mistakes are expensive.

" We will advise you in a few days just when the cable will be shipped.   You may rest assured we will push it as rapidly as possible.   As we have entered your order and this is our first real business transaction we would like an understanding as to payment, etc.   Our terms are 30 days where parties are satisfactory, otherwise, cash.   Kindly give us reference.   You understand, of course, our position.   We shall be pleased to hear from you by return mail."

The catalogue in the hands of defendant contained descriptions of the material used in considerable detail, and concluded with the statement:

"We are directly responsible for the perfection of everything we sell, and we guarantee our product against inherent mechanical or electrical defects.   We are financially responsible and fully able to carry out our contracts and guarantees."

Following upon the letter of February 16th were two communications relating to the subject of defendant's responsibility, but they are of little importance as the material was subsequently shipped and installed in the plant of the Detroit Stove Works.

After what appears to have been a fair test by the Detroit Stove Works, the system installed failed to work, acceptance of it was refused, and defendant was required to remove it from the plant.   On the trial, the testimony was conflicting as to whether the trouble arose from defects in the material supplied by plaintiff or from improper installation.   This question was fairly submitted to the jury.   It was also claimed by the defendant that

after some of the material had been received and the installation entered upon, defendant's agents, being doubtful about the material being proper, visited Cincinnati, taking samples of the material with them, and they offered testimony tending to show that at this time a new contract of guaranty was entered into by plaintiff. This question was likewise submitted to the jury by appropriate instructions.

The circuit judge also instructed the jury that unless there was this second guaranty, it became a question for the jury to determine whether, when the material was received by the plaintiff, any alleged defect was such as could be discovered upon inspection, and properly charged the jury that if it was, an acceptance of the material with knowledge of this defect would waive the defect. Indeed the case appears to have been fairly submitted to the jury if the court was right in assuming that the letters of February 11th, 15th, and 16th constituted the entire contract between the parties, not subject to be varied by testimony of prior negotiations between the parties. This question is practically the only question which need be considered in the case.

The circuit judge appears to have been of the opinion that the letter of February 11th, and the replies to it, constituted a complete contract in itself such as to exclude reference to any prior negotiations, and in support of this ruling of the circuit judge, the cases chiefly relied upon are three: *Zimmerman Manfg. Co.* v. *Dolph*, 104 Mich. 281; *Nichols, Shepard & Co.* v. *Crandall*, 77 Mich. 401 (6 L. R. A. 412); and *John Hutchison Manfg. Co.* v. *Pinch*, 107 Mich. 12.

In the first case cited, the order for the machinery in question was reduced to writing formally, contained a warranty in terms, and defined the character of the warranty, and also contained the provision or statement that, "All the conditions upon which this order is made are stated herein." The case is very clearly distinguishable from the case under consideration.

The case of *Nichols, Shepard & Co.* v. *Crandall* was likewise an action brought for recovery of the price of machinery furnished upon a written order stating :

" This machine is ordered, purchased, and sold subject to the following express warranty and agreement, to wit :"

This was followed by a full and complete statement of the terms of the warranty and the provisions as to the course to be taken in remedying any defects which might be found to be in the machinery. The case was one in which the parties had very clearly put in the single writing all the terms of their agreement.

The case of *John Hutchison Manfg. Co.* v. *Pinch* was a case likewise of an order describing in detail the property to be furnished and containing an agreement to pay when the mill should be fixed and giving good results. It was sought to vary the terms of this agreement by parol evidence, and it was held that the parties had by this provision fixed the terms of the warranty by the writing, and the parol testimony was inadmissible to vary such terms. In this case, however, the rule was recognized that, where the writing does not embody all the terms of the contract, it is competent to show an additional agreement. This rule is supported in numerous cases in this court, the latest expression of the court being *Beld* v. *Darst*, 146 Mich. 143.

The case of *McCray Refrigerator & Cold Storage Co.* v. *Woods & Zent*, 99 Mich. 269, was a case in which there was a formal contract signed by both parties which was held to include all the undertakings between the parties. The difficulty in any given case is to determine whether the agreement under consideration is one purporting to contain the entire terms of the contract or whether reference may be had to other negotiations in construing it. In the present case, the letter of February 11th does not constitute a formal contract. At most it is a proposition. The statement, " This order is placed on

condition that you will guarantee these phones to us for the period of one year, as we have to make that guarantee to secure the order, and we want you to protect us on it," would seem to import one of two things, either that the plaintiff was expected to inform itself as to the terms of the guaranty which defendant had made to the Detroit Stove Works, and adopt that as the measure of its own guaranty, or, what is more reasonable, that the defendant would be understood to have made this guaranty with reference to its own knowledge as to the guaranty which the plaintiff had asserted that it made in its catalogue. The terms of the guaranty were not stated in the letter. The only guaranty which had been proposed by the plaintiff was the one stated in its catalogue following the description of its appliances. With this catalogue before the defendant, we think it must be assumed that the letter was written with reference to it, and that both parties must have understood that, when the requirement of guaranty was stated, that that guaranty was spoken of which was the only one ever considered between the two parties. The case is quite different from what it would be had the order itself purported to be the culmination of negotiations and upon a contract signed between the two parties in which all the terms of the agreement were upon the face of the written instrument set out.

We think the circuit court was in error in holding that the contract between the parties was evidenced only by the letters of February 11th, 15th, and 16th, and that for this error the judgment should be reversed and a new trial ordered.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.