UNION TRUST CO. v. DETROIT RIVER TRANSIT CO.

1. CONTRACTS—SALES—WARRANTIES — PAROL EVIDENCE TO VARY WRITTEN INSTRUMENT—INTERPRETATION.

No evidence of a warranty made orally by the agent of the seller of a steam hoist is competent to vary the terms of the contract of sale, where it appeared that the seller wrote the buyer, after oral negotiations terminated, that the agent had reported to him the making of the sale on terms stated in the letter, to which the vendee replied that his understanding was correct.[1]

---

[1] As to right to show parol warranty in connection with contract of sale of personalty, see note to *Electric Storage Battery Co.* v. *Waterloo, C. F. & N. R. Co.* (Iowa), 19 L. R. A. (N. S.) 1183.

2. SAME—EVIDENCE.

    A subsequent letter of the vendor to the vendee stating in response to complaints made by the purchaser, that he had referred the matter to the agent who would see the purchaser about it, was not an admission of the warranty.

Error to Wayne; Murfin, J. Submitted June 23, 1910. (Docket No. 135.) Decided September 27, 1910.

Assumpsit by the Union Trust Company, administrator of Joseph H. Berry, deceased, against the Detroit River Transit Company for goods sold and delivered. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*George W. Radford,* for appellant.

*Angell, Boynton, McMillan & Bodman,* for appellee.

Joseph H. Berry sold and delivered to the Detroit River Transit Company a steam clam shell hoist. The vendee February 27, 1907, filed its declaration in the Wayne circuit court, the substance of the allegations therein, in addition to the common counts in assumpsit, being that plaintiff had a contract to transport and deliver sand in Canada and purchased the hoist in question to be used in carrying out said contract in unloading sand from its vessel; that it was represented and warranted to said plaintiff, vendee, by said Berry, through his agent, French, that the hoist and appurtenant machinery were in good condition, in working order, of first-class material, suitable for the purpose aforesaid. Breaches of the alleged warranties are set out with particularity, and the resulting damages are stated. Plaintiff's bill of particulars includes items for loss of profits, wages paid to men, the expense of making repairs, etc., the total of them with the down payment being $5,513.53. To this declaration defendant Berry pleaded the general issue, and on March 14, 1907, he filed a declaration in said court containing the common counts in assumpsit to recover of the Detroit River Transit Company the balance of the pur-

chase price of the hoist. The plea was the general issue with notice of the special matters of defense contained in the declaration in the first mentioned cause. Mr. Berry died, and the Union Trust Company, as administrator of his estate, was thus brought upon the record. There was an order consolidating the causes, and, upon the trial of the consolidated cause, a verdict was directed in favor of the administrator for the balance of the purchase price of the hoist and interest, and upon this verdict the Union Trust Company had judgment.

It appeared that, having concluded negotiations for the sale of the hoist for Mr. Berry, and having received from the Detroit River Transit Company its check for $500, Mr. French, the agent of Mr. Berry, composed a letter which, with the check, was delivered to Mr. Berry, who signed and sent the letter to the treasurer of the Detroit River Transit Company, and received a reply thereto. It appeared that the check was not actually paid, through the clearing house, until October 29th; but no one testified concerning the actual date of its deposit or the date when it was indorsed by Mr. Berry. It bears his indorsement, that of Berry Bros., Limited, and that of their indorsee, the Commercial National Bank. It was drawn upon American Exchange National Bank. Both banks are in Detroit. The letters referred to read as follows:

" DETROIT, October 26th, 1906.

"Mr. H. E. BEECHER, Treasurer,
    " Detroit River Transit Company,
" Detroit, Mich.

"*Dear Sir:* Referring to our conversation regarding the steam clam-shell hoist, Mr. French reports that he has arranged to sell you this hoist as it now stands on the river front on Private Claim 10 for the sum of $2,250.00. He has today handed me your check for $500.00 which is hereby acknowledged, and it is understood that the balance of $1,750.00 is to be paid on December 15th, 1906. If this arrangement is as you understand it, will you kindly acknowledge, and oblige,
"Yours very truly,<br>" J. H. BERRY."

"October 29, 1906.

"Mr. J. H. BERRY,
    "c/o Berry Bros.,
            "City.

"*Dear Sir:* Answering yours of the 26th regarding the Steam Clam-Shell Hoist, would say that your understanding of the matter is correct.

"Yours truly,
        "H. E. BEECHER."  ·

Later, in November, 1906, two other letters passed. They are here set out:

"Nov. 23, 1906.

"Mr. JOS. BERRY,
    "Berry Bros. Co.
            "City.

"*Dear Sir:* Referring to the unloading derrick which we bought from you recently would say that your Mr. French represented and sold this to us as being in perfect working condition with the possible exceptions of one or two parts which were missing and which he said had been stolen while laying on the shore. Had we known the conditions of this machine was in we would not have taken it as a gift, because by the time we pay the expense of putting this in working order it will have cost us as much as a new machine.

"We have spent more than two solid weeks with a crowd of boiler makers and machinists trying to get this in working order and at the present writing it is not yet in shape. Among a few of the serious items which were badly in need of repairs were the boiler tubes and the piston rod to the bucket. We were obliged to have a brand new set of boiler tubes installed and also have the piston rod of the clam shell straightened. This was sprung so much that it was impossible to pry open the jaws of the clam shell.

"As soon as we find out definitely what our repair bill on this machine will be we are going to make a claim on you for it and we are notifying you to this effect now, so that should you desire, you can have your Mr. French make an examination of it and investigate our claims. The most serious loss which we have had due to this clam shell is that we have our boat waiting with a load for one

week to be unloaded. This, of course, at this time of the year means a very serious loss to us.

"Yours truly,
"H. E. BEECHER."

"DETROIT, November 24th, 1906.
"Mr. H. E. BEECHER, Treasurer,
"Detroit River Transit Company, Detroit.
"*Dear Sir:* Answering your favor of the 23rd inst., beg to say I have referred same to Mr. French, with request that he see you in reference to the complaint you make.

"Yours very truly,
"J. H. BERRY."

It appeared that the hoist had been used by Mr. Berry, who purchased it as a second-hand hoist, and stood on his land in Detroit. It was there examined by a representative of the vendee, and was there received by it. The case for plaintiff was made by the first two letters which have been referred to and by proof of the amount of the unpaid purchase price and interest. In substance and effect the court excluded all testimony offered by the vendee claimed to have a tendency to vary or contradict or explain the terms of the said letters. In excluding the last two letters of the correspondence, the court said:

"I may say that the basis of the exclusion is twofold. In the first place, it has a tendency, at least in parts, directly to contradict the contract that these parties entered into, and, further, as I construe this contract, giving it the most favorable construction for the defendant's side of this case, the best that could be said is that there might be an implied warranty of fitness and, under those circumstances, that letter, I do not think, would be proper. In the absence of the expression in Ex. 1, 'Sell you this hoist as it now stands,' I should hold there was an implied warranty of fitness, because counsel has shown that these parties knew the uses to which the machine was to have been put. I would hold there was an implied warranty of fitness, and they could complain of latent defects, so that they could have returned the machine. I would hold that it is their duty to make an examination within a reasonable time and discover such defects as were discov-

erable, and then either affirm or reject. Failing to do that, they cannot now be heard to complain."

The errors assigned upon exceptions to these rulings present the meritorious questions.

OSTRANDER, J. (*after stating the facts*). The question in this as in all similar cases is whether the writing produced as evidence of the agreement purports to contain all of the terms of the contract. In a particular case, as, for example, *Electrical Appliance Co.* v. *Standard Electric Co.*, 151 Mich. 662 (115 N. W. 982), it may appear upon the face of the writing that some term has been omitted. In *Beld* v. *Darst*, 146 Mich. 143 (109 N. W. 275), a majority of the court, in view of peculiar circumstances recited in the opinion, sustained the ruling of the trial court admitting testimony of a parol contemporaneous agreement of the parties, although the writing relied upon as evidence of the principal agreement appeared to be complete. In the case now presented it is apparent that Mr. French, representing Mr. Berry, and the representative of the Detroit River Transit Company, had orally agreed about the sale of the hoist—had made a bargain—before any letter was written. It seems to be quite as apparent that the only purpose which the immediate correspondence served, or could have intended to serve, was to state, in writing, the terms of the bargain as between the principals thereto. Mr. Berry advises the vendee that he is stating the terms of the agreement as they had been reported to him by his agent. There is no apparent ambiguity in the language employed. No warranty or representation is referred to. On the contrary, the language aptly affirms the absence of conditions or warranties, express or implied, and the understanding that the vendee took the property as it stood; that is, in the condition in which it was found, and that delivery was made on the river front on his land. The understanding of the terms of the sale, as thus expressed, is declared by the vendee to be his understanding also. In-

terpretation of the agreement, thus evidenced, is not affected by the fact, if it was a fact, that the vendee had taken possession of the hoist or by the fact, if it was a fact, that Mr. Berry had transferred the check before the correspondence was concluded.   The last letter appearing in the correspondence of the parties cannot be treated as an admission of the facts stated in the one to which it is a reply or as the vendor's interpretation of the meaning of the words used in his first letter.   And it was followed by action on the part of the vendor which negatives any such idea.

The court below made a proper disposition of the matter, and the judgment is affirmed.

BIRD, C. J., and HOOKER, BLAIR, and STONE, JJ., concurred.