THE ZIMMERMAN MANUFACTURING COMPANY v. DARIUS DOLPH.

*Sale—Breach of warranty—Parol evidence—Waiver—Practice in Supreme Court.*

1. A contract for the purchase of a windmill contained a warranty as to the manner of its erection and the making of repairs made necessary by defective manufacture. In a suit by the vendor to recover the purchase price of the mill, the vendee was permitted to introduce evidence of conversations between himself and the vendor's agent prior to the execution of the contract, tending to prove verbal warranties, and also a circular issued by the vendor in regard to its windmills. And it is held that, the vendor being liable only on the warranty contained in the contract, and no fraud being claimed in its execution, it was error to admit the testimony; citing *Nichols, Shepard & Co. v. Crandall*, 77 Mich. 401.

2. The contract provided for 60 days' notice by the vendee to the vendor to furnish defective or damaged parts of the windmill. In response to a notice that the mill did not comply with the

contract, an agent of the vendor made certain repairs, which, as claimed by the vendor, put the mill in good condition. The notes sued upon were then executed, and no notice of any defect was afterwards given until the notes matured. And it is held that the plaintiff was entitled to·an instruction that if the agent believed the mill was in proper condition to comply with the contract, and so notified the vendee, and left with that understanding, and the vendee, without notifying the vendor, continued to use the mill until the notes matured, such conduct would be a waiver of any defect in the mill and of the right to reject it; citing *Turner v. Machine & Foundry Co.*, 97 Mich. 166.

3. Assignments of error upon the admissibility of testimony will not be considered where no reference is made, either in the assignments or in the brief, to the pages of the record an examination of which is necessary to the investigation of the questions raised.

Error to Calhoun. (Smith, J.) Argued February 12, 1895. Decided March 5, 1895.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Mains & Mains,* for appellant.

*William H. Porter,* for defendant.

GRANT, J. Plaintiff sold to the defendant a windmill called the "Monarch." The contract was in writing, dated August 28, 1888, and is as follows:

"Zimmerman Mfg. Co., Established 1874, Incorporated 1886, Auburn, Indiana:
"Ship to me on or before Sept. 10,.1888, or as soon as possible thereafter, to Homer, *via* the cheapest R. R., the following list of articles, at prices opposite each, and erect at your earliest convenience:

| | |
|---|---|
| 1 ten-foot Monarch wind engine | $80 00 |
| 1 thirty-foot derrick, upper platform and brackets. | 15 00 |
| 1 improved lift pump standard No. —— | |
| 1 2½x10 brass-lined cylinder | 8 00 |
| 1 round tank, size 5 foot bottom, 2 foot stave | 12 00 |
| 1 galvanized house tank, cased and painted | 10 00 |

Enough for well feet one-inch galvanized iron pipe,
   at 28 cents per foot for amount used.
And other fixtures or goods at manufacturers' prices.
Well is 31 feet deep from top of ground, 4½ feet of
   water.

"I agree to pay the freight [word "freight" stricken out] from Auburn, Ind.; draw engine and material from depot on arrival; furnish four anchor posts 7 feet long 6x6 inches square, 3 feet from top, and plank for platform; do all the digging of anchor holes and trenches for convey pipes; to board and assist workmen while putting up work, furnish them conveyance to and from railroad station or next job, if in the same vicinity,—all at my cost. When said wind engine and fixtures shall be erected and in good working order, I shall make the following payments, either cash or note, to the Zimmerman Mfg. Co., or its workmen, for goods bought as above specified, viz.: $50.00 note, due on or before October 1, 1889, payable at Homer; $70.00 note, due on or before October 1, 1890, bank of Thomas Lyon,—with interest payable at eight (6) per cent. per annum, waiving valuation laws.

"WARRANTY: The above wind engine is purchased with the distinct understanding that it is to be erected in a good and substantial manner, and safe from any injury from any tornado or gale that does not overturn the tower or injure other permanent structures in the neighborhood, and be furnished free of charge all repairs caused by defective manufacture, for one year from the day of erection, providing the mill is properly cared for. I shall give you 60 days' notice to furnish defective or damaged parts. Defect in any one part to affect price and purchase of that part only. Lack of water no reason for non-settlement.

"All the conditions upon which this order is made are stated herein, and on my failure to make the settlement hereinbefore provided for (when said mill is up and in working order), or to receive or accept said goods so ordered when shipped to me, or to draw the same from the depot on their arrival, or from the factory in accordance with this order, then the amount of the purchase price for the same, as herein stated, shall become due and payable without demand.

"I live on section 33, township of Clarendon, county of Calhoun, State of Michigan, 8 miles from Homer, and my postoffice address is Clarendon, and the title of the farm

on which the wind engine will be placed is in my own name.

                                    "DARIUS DOLPH."

December 21, 1888, defendant executed two notes, one for $50, the other for $70,—the price of the mill.    Attached to each note was the following:

"This note, being one of a series of two, is given for a Monarch wind engine and attachments; and it is hereby agreed between the seller and purchaser that said goods shall remain the property of the Zimmerman Mfg. Co. until payment with all interest, or judgments and costs obtained thereon shall have been paid, and, upon the failure to pay any one of such series when due, shall operate to render all immediately due and payable at the option of the legal holder without notice, and the said Zimmerman Mfg. Co. may, at their option, take possession of and remove all goods furnished by them, and any payment made them shall be for the use and rent of such goods. These notes to become due on the removal of the maker from the place where at this time resides.    *    *    *

"I own in my own name 100 acres of land, which is worth $3,000, free of all incumbrances except $1,200.    I own $500 worth of personal property over and above all indebtedness.    And I make this statement for the purpose of procuring credit for which the within note is given."

Defendant refused to pay, and plaintiff brought suit. In his plea of the general issue he gave "notice of a breach of warranty, in that the plaintiff represented the mill to be a good mill, perfect in construction, and would do good work, whereas the mill is imperfect, and is worthless and of no value, will not run or pump water except in high winds, and was never completed, in that plaintiff did not connect mill to tank."

1. Defendant was permitted to introduce evidence of conversations between himself and plaintiff's agent prior to the execution of the contract, tending to prove verbal warranties, and also a circular issued by plaintiff in regard to its mill.    The admission of this testimony was error. The parties had deliberately put their contract in writing.

No fraud is claimed in the execution of the contract. The only warranty for which the plaintiff is liable is that contained in the written contract. The case is expressly ruled by *Nichols, Shepard & Co. v. Crandall*, 77 Mich. 401.

2. By the terms of the contract, defendant agreed to notify the plaintiff, by giving 60 days' notice, to furnish defective or damaged parts. One Warwick, an agent of the plaintiff, in response to a notice that the mill did not comply with the contract, made certain repairs. It was claimed by the plaintiff that the mill was then put in good condition, in compliance with the contract; that the notes were then given; and that defendant gave no notice of any defect after that time, and until the notes matured. The court should have instructed the jury, as plaintiff requested, that if Mr. Warwick believed the mill was in proper condition to comply with the contract, so notified the defendant, and left with that understanding, and the defendant, without notifying the plaintiff, continued the use of the mill until the notes were due, such conduct would be a waiver of any defect and of the right to reject it. *Turner v. Machine & Foundry Co.*, 97 Mich. 166. The court instructed the jury that, if defendant did not know what the defect was, he was under no obligation to give any notice. His inability to determine what the defect was did not obviate the necessity to notify plaintiff that the mill was defective and did not work. The law would not permit him to keep and use the mill for a year without objection, and then defend upon the ground that it did not comply with the contract. Plaintiff was entitled to notice and the right to remedy the defect, if any existed.

3. Many other errors are assigned, most of them relating to the admissibility of evidence. Inasmuch as they depend very largely upon the construction of the contract, already decided, it is unnecessary to consider

them. As to some of them no reference is made, either in the assignments of error or in the brief, to the pages of the record which it is necessary to examine in the investigation of the questions raised. Such points will not be considered. Attorneys, in either their briefs or assignments, should refer to the record, and not impose on this Court the burden of reading a record to find them.

Judgment reversed, and new trial ordered.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.