Maxwell, J.
Judgment on the pleadings having been rendered in this case, it is necessary to understand the condition of the pleadings at the time the judgment was rendered. ' 1
Fairbanks, Morse & Co. commenced this action against The Oil Creek Gold Mining Company by filing a complaint setting forth two causes of action. An amended complaint was filed which superseded the original, and in which two causes of action were set forth, the first upon a contract, as follows:
“Denver, Colo., March 6th, 1899.
“The Oil Creek Gold Mining Company,
“Mr. O. It. Salmons, Manager,
“Colorado Springs, Colorado.
“Gentlemen: We hereby propose to ‘furnish *144 you one of our 34 H. P. combined gasoline air compressors, all complete, for the sum of twenty-one hundred and fifty dollars ($2,150.00), f. o. b. 'ears Beloit, Wisconsin.
“We further agree to ship this compressor from Beloit, Wisconsin, to Denver, Colorado, with other machinery, giving you the benefit of carload rate.to Denver at 80c per cwt.; also agree to furnish competent man to superintend the erection of the engine without expense to you.
“We guarantee this compressor to be a perfect working machine, economical in its use of gasoline and reliable in its work. We guarantee it against any imperfections of workmanship and material, and agr’ec to make good any part showing up defective within a period of one year, without cost to you.
“We also agree that the crank shaft shall extend through one or both fly wheels sufficiently far to permit of the use of a pulley should you wish to use one in the future.
“We agree to make shipment the latter part of March, and will shorten this time as much as possible. Terms of payment, one-half (4) cash with the order and balance thirty days after the erection of the engine. Your acceptance of this proposition to constitute a contract by and between us.
“Yours very truly,
“FAIRBANKS, MORSE & CO.,
“PI. F. Probert.
“The foregoing proposition is hereby accepted.
“TPIE OIL CREEK GOLD MINING CO.,
“O. R. Salmons, Mgr.”
The second cause of action was upon an account for merchandise sold and delivered by the plaintiff to the defendant, about which there is no controversy, except as the same may be raised by the cross-complaint hereinafter set forth. The amended complaint *145 alleges, “that the said air compressor was thereafter delivered to the defendant by the plaintiff in pursuance of the terms of the said contract.” An answer was filed to this amended complaint which, among other things, “denies that said air compressor was delivered to the defendant by the plaintiff, in pursuance of the terms of said contract.” The answer also set forth certain affirmative matters in the nature of a cross-complaint and counterclaim.
A replication was filed to the affirmative matter pleaded by the defendant, and the ’cause came to trial before the court without a jury.
The court ruled that the defendant by its answer admitted the performance by the plaintiff of its contract. No exception was saved to this ruling of the court. Thereupon defendant assumed the burden of proving the affirmative allegations of its counterclaim and introduced evidence for that purpose. The introduction of evidence had proceeded but a short time, when the defendant requested and was granted permission to file an amended answer, and to enable defendant to do this the further hearing of the cause was continued until the next day. Upon the following day defendant filed its amended answer and cross-complaint. The amended answer admits the execution of the contract, admits “that the plaintiff delivered to the defendant a combined gasoline air compressor about the time alleged in the complaint,” admits the erection of the compressor about the date alleged in the amended complaint, the payment of $1,075.00 on account, the possession of the compressor at the time of the institution of the action, and alleges a rescission of the contract by defendant, nd notice thereof to plaintiff, March 13, 1900, more Ilian one year after the execution of the contract, denies any indebtedness of the defendant to the plaintiff, and alleges certain negotiations between the. *146 plaintiff and defendant “prior to the making of such contract and the purchase of said machine,” which allegations are substantially the same as those set forth in the cross-complaint and counterclaim, as follows :
“Prior to the making of said contract mentioned in said complaint and the purchase of said machine, this defendant applied to plaintiff for the purchase of one of its air compressors that would drive a three and one-quarter inch (3|: inch) Ingersoll-Sergeant drill at defendant’s mine in El Paso county, and stated to defendant that the altitude of said mine where the said machine was to be used was about eleven thousand five hundred feet (11,500); that thereupon plaintiff, as an inducement to said defendant to buy one of its said machines and as an inducement to the making of said contract, represented to defendant that its thirty-four (34) horse power compressor would certainly do said work in a satisfactory manner; that defendant, relying upon the said representations and having no knowledge of the subject, which fact was known to said plaintiff, this defendant agreed to purchase said machine and accepted the proposal set out in said complaint. Defendant further says that said machine has never produced in operation at said mine to exceed twenty-three (23) horse power, nor is it capable of producing more at said mine, which is wholly inadequate to operate said Ingersoll-Sergeant drill, one of which said drills was sold to defendant by plaintiff to be used with said machine about the time of the purchase and delivery thereof; that said machine when installed would work only spasmodically, running for a short time and then stopping, that since the installation thereof and until after the institution of this suit, plaintiff has made repeated efforts to remedy the inefficiency of said machine and to increase its power, but wholly with *147 out success, that among* other things done by plaintiff for said purpose was the removal from said machine of a certain extra compression plate and also the recommendation .to defendant to substitute for said Ingersoll-Sergeant drill a Leyner drill, which requires less power to operate, which said substitution was made by this defendant; but the defendant says that neither of said changes and nothing that plaintiff did to increase the efficiency of said machine has perceptibly affected the same, and that said machine has wholly failed to work or drive efficiently or satisfactorily either of said drills, and all the work upon said premises by said machine has been done at great loss and inconvenience to said defendant and at a large and unnecessary expenditure of money in operating the same over and above what would have, been necessary if the said machine had done the work for which it -was bought and which plaintiff represented it was competent to do before the purchase thereof.” All of which was to the damage of the defendant in the sum of $6,000.00.
Upon the filing of the amended answer, the plaintiff moved for judgment as prayed for in its amended complaint, upon the grounds that the amended answer admits all of the material, allegations of the amended complaint, does not put in issue any material allegations of the amended complaint, and that the affirmative allegations of the cross-complaint are wholly insufficient in law to constitute a defense or counterclaim to either cause of action alleged in the amended complaint.
Motion granted; judgment against the defendant according to the prayer of the amended complaint, from which this appeal.
The only error relied on for a reversal of the judgment is the ruling of the court in granting this motion, although other errors are assigned.
*148 A careful analysis of the admissions and affirmative allegations of the amended answer and cross-complaint, warrant the conclusion that all of the material allegations of the amended complaint are either admitted or are uncontroverted by the amended answer and cross-complaint.
The amended answer admits that “a combined gasoline air compressor” was delivered about the time alleged. Counsel for appellant insists that this is not an admission that “one 34 H. P.” engine was delivered. This contention may be conceded; still, nowhere in the amended answer is there a denial of the material allegation of the amended complaint “that the said air compressor was thereafter delivered”; hence, not being controverted, this allegation must be taken as true. — Mills’ Ann. Code, sec. 71.
So that for all practical purposes the material allegations of the amended complaint stand admitted by the amended answer.
The contract sued on is complete, unambiguous, definite and certain, requiring no explanation of any of its terms; its warranties are fully and clearly expressed. The answer admits that the plaintiff delivered to the defendant “ a 34 PI. P. combined gasoline air compressor,” all complete; that the machine was received and erected by the defendant at about the time required by the contract, and that the defendant used the same until after this suit was commenced. There is no averment that the compressor was not a perfect working machine, or that it was not economical in the use of gasoline and reliable in its work, or that there were any imperfections of workmanship or material, or that the plaintiff had failed to make good any parts showing up defective.
The affirmative defenses of the answer and counterclaim consist' of alleged representations, statements and inducements made by the plaintiff “prior *149 to the making of such contract and the purchase of said machine,” and the failure of the machine to develop 34 horse power and perform the service for which it was alleged by the defendant to .have been purchased, ‘ ‘ at the mine, ’ ’ over 11,000 feet above sea level.
Counsel for appellant concedes that a written contract cannot he contradicted by parol evidence of a prior or contemporaneous parol agreement.
"VVe are of the opinion that the rule of evidence above referred to is more comprehensive than stated, and is more fully stated as follows: That when the parties to an agreement have reduced it to writing, in such form as to import a valid legal obligation, complete and unambiguous in its terms, with no uncertainty as to the extent of the obligation, it is (in the absence of fraud, accident or mistake) conclusively presumed that the writing constitutes the whole engagement of the parties, and that no extrinsic evidence of prior or .contemporaneous negotiations between the parties is admissible to vary or qualify a written contract, either in its terms or legal import.
It may he conceded that proof of the affirmative averments of the answer and cross-complaint would not contradict the terms of the written contract, but it is apprehended that it will not be contended that such evidence would not vary and qualify the written contract.
Briefly stated, the amended answer avers, previous and contemporaneous negotiations regarding the purchase of a machine, to perform a definite and particular service at an unusual place, and under peculiar and unusual circumstances and conditions, and the failure of the machine to perform such service at such place.
The contract, as we read it, was to deliver a specific machine of a definite size, economical in its use *150 of fuel, reliable in its work and perfect in workmanship and material, with an agreement to replace defective parts. The contract contained no warranty or guaranty as to its performance, at any place whatever; it contained certain express warranties above stated, and no other or further warranties will he implied by law, such as those sought to be incorporated in the contract, by proof .of the affirmative' allegations of the answer and cross-complaint.
The delivery of the machine designated in the contract is admitted by the answer, the affirmative allegations do not-call in question this admission, but seek to add to and enlarge the terms of the written contract, to such an extent as to substitute, by proof of prior and contemporaneous negotiations, an entirely different contract from the one entered into and reduced to writing by the parties, contrary to the well settled and salutary principle of law above stated.
Counsel for appellant invokes the following exceptions to the general rule, in support of his position, that extrinsic evidence may be admitted to vary and qualify the terms of the-written contract under consideration:
First. ‘ ‘ That where an article of personal property is purchased for particular use, .and that use is made known to the seller, and the purchaser relies upon the superior knowledge and skill of the seller as to the fitness of the article for such use, and particularly where he manufactures it, or the purchaser does not see it, there is an implied warranty that the article is fit for such úse.”
Such may be the rule in cases where the facts make the rule applicable, but we apprehend that the contract under discussion comes within the well-settled and well-recognized rule, as expressed in textbooks and sustained by authority, that where a *151 known, described and definite article is ordered of a manufacturer, although it is required for a particular purpose, still, if the known, described and definite article be actually supplied, there is no warranty that it shall answer the purpose of the buyer.
Second. “That under all forms of contract, if there be any obscurity as to its meaning, parol testimony is admissible to apply the contract to its subject-matter, to the end that the real intention of the parties and the object of the contract may be made manifest. ’ ’
The contract under discussion does not come within the above exception, as there is no obscurity in its meaning. To hold that such obscurity exists would be to abrogate the rule entirely, as it is difficult to conceive of a contract which is more unambiguous, definite and certain in all its terms.
Third. “That unless contracts are so clearly expressed as to leave no doubt as to their scope and effect, they should be given the construction which will make them effective as obligations, and when their meaning is doubtful, the interpretation put upon them by the panties will be adopted and enforced by the courts.”
To this proposition the same answer is made as to the last, with the addition that there is nothing in the record in this case to show that either of the parties to the contract has placed its interpretation upon it, while, on the contrary, the defendant alone is before this court asking the court to interpret the contract to mean something entirely different from what its language implies.
Fourth. “That the general rule that the law presumes all prior negotiations to be merged into the contract subsequently reduced to writing, does not exclude written evidence as to what such negotiations *152 were, especially where such evidence is necessary to make clear the contract itself.”
We are of the opinion that all negotiations prior to or contemporaneous with the execution of the written contract were merged in it, and that no extrinsic evidence, parol or written, is admissible to vary or qualify the terms of the written contract, in the absence of fraud, accident or mistake. — Rennard v. Sampson, 12 N. Y. 561; Graham v. Sadlier, 165 Ill. 95, 46 N. E. Rep. 221.
We have been cited to no authority which holds the contrary.
Tucker v. Edwards, 7 Colo. 209; Hunt v. Hayt, 10 Colo. 278, are not in point, as the ruling in those cases was made with reference to the statute of frauds.
The following authorities sustain the general principles above announced, although many more might be cited. — J. I. Case Plow Co. v. Niles & Scott Co., 90 Wis. 590; Seitz v. Brewers R. M. Co., 141 U. S. 510; Miller v. Municipal Electric Co., 133 Mo. 205; Zimmerman Mfg. Co. v. Dolph, 104 Mich. 285.
The district court did not err in granting the motion for judgment, and the judgment will be affirmed. Affirmed.