## 9528

### INTERNATIONAL HARVESTER CO. OF AMERICA v. LAW.

#### (90 S. E. 186.)

1. SALES—CONTRACT—WAIVER OF TERMS.—A waiver of the terms of a contract of sale, creating a new obligation on the seller, does not arise, where, after it has fulfilled its express warranty, all other warranties being expressly excluded, it on complaint of the buyer sends experts to repair the engine sold.

---

FOOTNOTE.—As to waiver of conditions in contract of sale limiting the warranty, see notes in 50 L. R. A. (N. S.) 796 to 805.

Before Bowman, J., Bishopville, March, 1915. Reversed.

Action by the International Harvester Company of America against E. D. Law. From an adverse judgment, plaintiff appeals.

*Messrs. Lyles & Lyles,* for appellant, cite: *As to evidence of break of machinery after period of warranty:* 69 S. C. 100; 24 S. C. 124 to 129; 46 S. C. 411; 1 Greenleaf Ev., sec. 275; 86 S. C. 489; 86 S. E. 350; 153 N. W. 1059.

*Messrs. McLeod & Dennis,* for respondent.

October 12, 1916.

The opinion of the Court was delivered by Mr. Justice Hydrick.

Plaintiff sued on a note given by defendant in part payment for an engine. Defendant set up, as defenses, breach of warranty, express and implied, and fraud and misrepresentation in the sale, and a counterclaim for damages caused by defects in the engine.

The contract of sale contained the following provisions:

"International Harvester Company of America (Incorporated), warrants the within described engine to do good work, to be well made, of good materials, and durable if used with proper care. If, upon one day's trial, with proper care, the engine fails to work well, the purchaser shall immediately give written notice to International Harvester Company of America, at Chicago, Illinois, and to the agent from whom it was purchased, stating wherein the engine fails, shall allow a reasonable time for a competent man to be sent to put it in good order, and render necessary and friendly assistance to operate it. If the engine cannot then be made to work well, the purchaser shall immediately return it to said agent and the price paid shall be refunded, which shall

constitute a settlement in full of the transaction.    Use of the engine after three days, or failure to give written notice to said company and its agent, or failure to return the engine as above specified, shall operate as an acceptance of it and a fulfillment of this warranty.    No agent has power to change the contract of warranty in any respect, and the within order can be canceled only in writing from said company's Chicago office.    This express warranty excludes all implied warranties, and said company shall in no event be liable for breach of warranty in an amount exceeding the purchase price of the engine.    If within ninety days time any part proves defective, a new part will be furnished on receipt of said part showing defect."

Under date of September 23, 1910, after the engine had been installed, defendant gave plaintiff's expert the following certificate, addressed to plaintiff:

. "This is to certify that your expert, Litchfield, has adjusted and operated my thirty-five horse power Gaso. Eng. to my entire satisfaction.    (Signed) E. D. Law, Purchaser."

Defendant testified that he used the engine to run his ginnery, and ginned about 500 bales of cotton with it during the ginning season of 1910-11; that he commenced ginning again, about the middle of August, 1911, for the season of 1911-12, and, about the middle of October, after he had ginned about 100 bales, the gears of the engine broke.    So far as the evidence shows, that was the first break.    Previous to that time the engine seems to have worked satisfactorily.    Plaintiff sent an expert to fix it, but, from that time on, it continued to break down, from time to time, and did not work satisfactorily, notwithstanding repeated efforts to make it do so.

On December 14, 1911, after plaintiff's expert had repaired it, defendant gave him the following statement:

"I, E. D. Law, have this day thoroughly tested the thirty-1910, after the expert for the I. H. Co. put same in repair,

five horse power gasoline engine sold me on or about May, and am thoroughly satisfied with same, and the same is running satisfactorily.    (Signed) E. D. Law."

On the back of this paper was a list of parts to be furnished free of charge.

On December 26, 1911, defendant gave plaintiff a check for the amount of the note sued on, but it was protested for nonpayment, defendant says, because the engine broke down the next day.   In February, 1913, plaintiff sent an expert who worked on the engine and furnished some parts for it. Suit was brought in October, 1913.

Plaintiff objected to evidence of breaks or repairs which occurred after 90 days from date of installation and use of the engine by defendant, on the ground, that after the lapse of that time, by the terms of the contract, the warranty was fulfilled, and plaintiff's liability under the contract was ended.   The evidence was admitted to show waiver of the terms of the contract, and the Court submitted the question of waiver to the jury, and, along with it, defendant's right to recover on his counterclaim.   The jury returned a verdict for $500 for defendant.

Plaintiff's objection should have been sustained.   The rights of the parties must be determined according to their contract.   Plaintiff was not bound to warrant the engine at all, and therefore had the right to limit the warranty given as it saw fit in any manner and to any extent acceptable to defendant, who accepted that given with his eyes open, and he is bound by it.   By the terms of the contract defendant agreed that all warranties implied by law should be excluded, and that his use of the engine for 3 days should operate as an acceptance of it and a fufillment of the warranty given, to wit, that it was well made, of good materials, and durable, if used with proper care, and would do good work, except as to parts breaking within 90 days.   Defendant used it for nearly a year before any part broke, and it did good work.

At any rate there is no evidence that it did not, or of any complaint during that time. Therefore, by the terms of the contract, the warranty was fulfilled and plaintiff's liability under the contract terminated before any break occurred. That being so, plaintiff could not be made liable for any defects which subsequently appeared, except by virtue of a new contract, of which there is no evidence.

But defendant relies upon waiver, his contention being that, because plaintiff waived its right to refuse to do anything, and furnished parts, and sent experts to work on the engine after its obligation to do so had terminated, it thereby revived its legal liability under the contract. It would be novel doctrine to hold that one or more acts of friendly assistance, done by a dealer in pursuance of the good business policy of trying to keep his customers satisfied, should create a legal obligation to do others, or should have the legal effect contended for in the case. If the contract had not been in writing, and there had been a dispute as to its terms, these acts might have been relied upon as evidence tending to show that plaintiff thought they were obligatory, and, therefore, as evidence of the construction put upon the contract by plaintiff, and circumstantially of the intention of the parties. But the contract is in writing, and is not ambiguous, and it shows that such was not the agreement of the parties. The principle of waiver, which, with respect to contracts, connotes the relinquishment of a right under an existing or executory contract is not applicable to the undisputed evidence in this case. As plaintiff's liability under the contract had expired, when the acts proved were done, they cannot have the legal effect of modifying the terms of the contract which had already been executed, or of creating a new liability under it. Therefore plaintiff's motion for a directed verdict for the amount due on the note should have been granted.

Judgment reversed.