12652

KNIGHT v. MERRITT ENGINEERING & SALES CO.

(149 S. E., 20)

*Mr. W. C. Moore,* for appellant,

*Messrs. Gibson & Muller,* and *Joe P. Lane,* for respondent,

May 6, 1929.

The opinion of the Court was delivered by Mr. Justice Blease.

This action was commenced February 22, 1927, by W. V. Knight against Merritt Engineering & Sales Company to recover damages in the sum of $3,000 for alleged breach of warranty growing out of the sale of a veneer drying plant to plaintiff by defendant. Some time prior to January 28, 1926, the plaintiff, who was then engaged in the veneer business in Dillon, entered into negotiations with the defendant company, a manufacturer of a machine for drying veneer strips, with its plant at Lockport, N. Y., for the purchase of such a machine. As a result of these negotiations, a written contract was executed by the parties on January 28, 1926, by the terms of which defendant sold to plaintiff a veneer drying machine to be shipped from defendant's factory to plaintiff at Dillon; the credit portion of the purchase price being secured by a retention of title agreement. The machine was delivered to plaintiff at Dillon and was installed by defendant. The first two notes were paid as they matured, but plaintiff refused payment of the subsequent maturities. Finally in February, 1927, defendant company brought an action in the Federal Court for the Eastern District of South Carolina for the possession of the machine for failure to pay the notes. In this action of claim and delivery the machine was delivered to defendant. Plaintiff then commenced this action in the Court of Common Pleas for Dillon County against the defendant company for damages.

The case was tried before Hon. M. M. Mann, and a jury at the October, 1927, term of the Dillon County Court, and resulted in a verdict for plaintiff for $3,000. Judgment was duly entered on the verdict. Within due time defendant gave notice of intention to appeal from the verdict and judgment.

The contract of sale contained, among others, the following provisions:

"The Company warrants every part and detail of the machinery covered by this contract to be proper material and workmanship and agrees to furnish without charge f. o. b. factory any part which may prove defective in material or workmanship within one year from the date of shipment, ordinary wear, tear and damage by improper use or care excepted. Where claims for defects are made, the defective parts shall be delivered to the factory for inspection, if so desired by the Company, and the Company shall also have the right to inspect and test said machinery wheresoever the same may be situated. The Company shall not be liable for work done or expense incurred, except upon written authority of the Company.

"The Company represents the machinery named in this contract to be capable of operating in a proper manner, as set forth in its printed matter and correspondence, and retention of the machinery thirty days after its arrival at destination shall be conclusive admission that said machinery is in every respect as represented and warranted and such acceptance shall release the Company from any and all claims for damage and loss sustained by the purchaser on account of any representation or warranty in the sale of said machinery. In case of non-acceptance of said machinery within the time specified above, the purchaser agrees to deliver to the Company the said machinery f. o. b. nearest shipping station, crated or boxed, in as good condition as received, and without any liability whatsoever for any loss or damage sustained by the purchaser, on account of the failure of the machinery to satisfy the requirements of the purchaser, or on account of any other reason whatsoever."

It appears that the machinery covered by the contract reached Dillon about the 1st of April, 1926, and that on or about the 14th of the same month an erecting engineer of defendant arrived and installed the same and put it in operation.

On May 1st thereafter, plaintiff addressed a letter to defendant, in which he says, "I wish to state that I am well pleased with the performance of the machine, which is an engine driven instead of a motor driven machine," and at the same time signed and handed to defendant's representative a written statement to the effect that the machine was "operating satisfactorily." Not until June 26th did plaintiff complain of alleged defects, and then requested advice as to correcting same. The machine was never delivered to defendant as provided in the sales contract, but it was forced to repossess the same in 1927 under claim and delivery.

By reference to the above-quoted provisions of the sales contract, it will be observed that defendant warranted (1) every part and detail of the machinery covered by the contract in question to be proper material and workmanship, and agreed to furnish without charge f. o. b. factory any part which might prove defective in material or workmanship within one year from date of shipment, and (2) the machinery named in the contract to be capable of operating in a proper manner, as set forth in its printed matter and correspondence, and provided that the retention of said machinery 30 days after its arrival at destination should be conclusive admission that it was in every respect as represented and warranted, and such acceptance should release the Company from any and all claims for damage and loss sustained by the purchaser on account of any representation or warranty in the sale thereof. These warranties will hereinafter be referred to as (1) and (2) warranties.

There is no allegation in the complaint that plaintiff made any demand upon defendant for any part or parts within one year from date of shipment under the (1) warranty, or that such demand, if made, was refused, and as a result thereof plaintiff sustained loss or damage. The whole complaint is predicated upon an alleged breach of the (2) warranty.

In discussing a similar provision in a sales contract, this Court said in *International Harvester Company v. Law,* 105

S. C., 520, 90 S. E., 186, 187: "Plaintiff's objection should have been sustained. The rights of the parties must be determined according to their contract. Plaintiff was not bound to warrant the engine at all, and therefore had the right to limit the warranty given as it saw fit in any manner and to any extent acceptable to defendant, who accepted that given with his eyes open, and he is bound by it. By the terms of the contract defendant agreed that all warranties implied by law should be excluded, and that his use of the engine for three days should operate as an acceptance of it and a fulfillment of the warrant given, to wit, that it was well made, of good materials, and durable, if used with proper care, and would do good work, except as to parts breaking-within ninety days. Defendant used it for nearly a year before any part broke, and it did good work. At any rate there is no evidence that it did not, or of any complaint during that time. Therefore, by the terms of the contract, the warranty was fulfilled and plaintiff's liability under the contract terminated before any break occurred. That being so, plaintiff could not be made liable for any defects which subsequently appeared, except by virtue of a new contract, of which there is no evidence."

To the same effect, see *Westinghouse Electric & Manufacturing Co. v. Glencoe Cotton Mills,* 106 S. C., 133, 90 S. E., 526, and *Murray Co. v. Peacock et al.,* 117 S. C., 384, 109 S. E., 121.

In discussing the question of waiver in such cases, it was said in *International Harvester Company v. Law, supra:* "But defendant relies upon waiver, his contention being that, because plaintiff waived its right to refuse to do anything, and furnish parts, and sent experts to work on the engine after its obligation to do so had terminated, it thereby revived its legal liability under the contract. It would be novel doctrine to hold that one or more acts of friendly assistance, done by a dealer in pursuance of the good business policy of trying to keep his customers satisfied, should create a legal obligation to do others, or should have the legal effect con-

tended for in the case. If the contract had not been in writing, and there had been a dispute as to its terms, these acts might have been relied upon as evidence tending to show that plaintiff thought they were obligatory, and therefore as evidence of the construction put upon the contract by plaintiff, and circumstantially of the intention of the parties. But the contract is in writing, and is not ambiguous, and it shows that such was not the agreement of the parties. The principle of waiver, which, with respect to contracts, connotes the relinquishment of a right under an existing or executory contract is not applicable to the undisputed evidence in this case. As plaintiff's liability under the contract had expired, when the acts proved were done, they cannot have the legal effect of modifying the terms of the contract which had already been executed, or of creating a new liability under it. Therefore, plaintiff's motion for a directed verdict for the amount due on the note should have been granted."

The retention of the machinery for thirty days, under the express language of the contract, was conclusive admission that such machinery was in every respect as represented and warranted and constituted an acceptance thereof, which acceptance released the defendant from any and all claims for damage and loss sustained by the plaintiff, if any, on account of any representation or warranty in the sale contract. Evidence of alleged defects after the expiration of the thirty-day period was clearly incompetent as not being responsive to the allegations of the complaint. It follows, therefore, that defendant's motion for a directed verdict should have been granted.

The judgment of this Court is that the judgment of the Court of Common Pleas of Dillon County be, and the same is hereby, reversed, and the cause be remanded to that Court with instructions that a verdict in favor of the defendant be entered as provided by Rule 27 of this Court.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.