## R. D. Hall *v.* Albert C. Hodgdon.

May Term, 1944.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 3, 1944.

*Witters & Longmoore* for the plaintiff.

*Arthur L. Graves* for the defendant.

Jeffords, J. On November 30, 1942, Hodgdon purchased from Hall through the latter's agent a certain tractor. At the time of the sale and in connection therewith, Hodgdon received a paper entitled "Order for Machines" which set forth a warranty or warranties in respect to the tractor. The machine did not function properly and Hodgdon by writ dated August 2, 1943, brought a

suit at law against Hall. In this law action Hodgdon demanded a refund of the purchase price or damages for breach of warranty. Hall then brought a suit in equity claiming that the above noted paper was given and received under a mutual mistake, as only a receipt was intended to be given and received in connection with the sale. The law action was then transferred to the court of chancery with Hall as plaintiff and Hodgdon as defendant. Hodgdon then filed an answer and a cross bill. In the cross bill damages are sought for breach of warranty.

A hearing was had, findings of fact were made and filed and a decree entered dismissing the plaintiff's bill of complaint, sustaining the cross bill and decreeing to the defendant the sum of $681.56 as damages with costs. The trustee was adjudged liable upon its disclosure.

The case is here on the plaintiff's exceptions. The only one relied upon is to the decree. Under this exception the only question for our determination is whether the decree was warranted by the pleadings and supported by the findings. *Hunt* v. *Spaulding,* 108 Vt 309, 312, 187 A 379. The facts as found which are material in the consideration of this question are as follows: Hall is engaged in the business of selling farm machinery. He has in his employ A. A. Cassady who sold the tractor, a second hand machine, to Hodgdon. The paper above referred to which was given Hodgdon by Cassady at the time of the sale was a form used for taking orders for certain machines. Blank spaces were filled in and it was signed by Cassady at time of delivery of the tractor and later by Hodgdon. On the reverse side of the paper appears the following:

## "WARRANTY AND AGREEMENT

"The Seller agrees to furnish free (except for freight or express charges) a new part to replace any part which with proper use, breaks or proves defective during the first ninety days after delivery, provided the defective part is promptly returned.

"The Purchaser agrees to give each machine a fair trial as soon as possible after receiving and within two days after the first use. If it then fails to work properly and prompt notice is given, the Seller will send a man within a reasonable time to put it in or-

der, the Purchaser agreeing to render friendly assistance. If it still fails to work properly and the Purchaser promptly returns it to the Seller at the place where delivered, the Seller will refund the amount paid, which shall constitute a settlement in full. Retention of possession or continued use shall constitute an acceptance and satisfaction of warranty and further assistance rendered the Purchaser shall not be considered a waiver of this provision. The Purchaser agrees to pay the expense of remedying any trouble due to improper handling.

"No agent of the Seller has authority to alter, add to or waive the above warranties, which are agreed to be the only warranties given in lieu of all implied warranties."

After the transaction was completed the tractor was loaded in a truck and taken to the defendant's farm. The next day the defendant's son attempted to skid some logs with it. After a short time one of the sprockets came off and some of the treads became dislocated. Within a day or two the defendant took the tractor back to the plaintiff's place of business. The tractor was repaired by Cassady and another workman and the defendant took it back to the latter's farm. The next day it would not start so a garage mechanic was called who found the trouble to be with the spark plugs. After these had been cleaned the tractor started and was used that day and a part of the following day. On the second day another sprocket came off and other trouble was found with the tractor. During these trials the defendant learned that the tractor did not have proper power, that it heated, that it used a large amount of oil, that the radiator leaked, and that it was not in working or serviceable condition.

After this second trial the defendant again took the tractor back to the plaintiff's place of business. Hodgdon then informed Hall that he was not satisfied with the tractor as it was no good. He said he did not want it and demanded back the money which he had paid for it. Hall refused to return the money, denying that there was any warranty.

The defendant left the tractor and consulted his lawyer about the matter who wrote a letter to Hall in which he quoted some of the "Warranty and Agreement" and made a demand for the return

of the money paid. Hall then consulted his attorney who wrote the defendant's lawyer denying the defendant's claim and setting forth reasons for the denial. These reasons in substance were, first, that the paper given in connection with the sale was mistakenly given so that the warranty set forth therein did not apply and, secondly, that there was nothing materially wrong with the tractor. The letter further stated that the return of the tractor was not accepted, and that it was at Hall's garage subject to the call and risk of Hodgdon.

After the tractor had been taken back to Hall's garage for the second time it was repaired by workmen employed by Hall. About ten days after this second return Hodgdon came to the garage and took the tractor back to his farm. It was then used a part of the time for two or three days in skidding logs. It did not work properly and Hodgdon gave up trying to use it and left it in his doorway covered up, without further use.

A short time after Hodgdon had taken the tractor to his farm for the last time his lawyer wrote a letter to Hall in which he said that he had suggested to Hodgdon that the latter had better give the tractor one more trial and the same had been done and it still was not in good working order. There were set forth in the letter various things that were claimed wrong with the tractor and it was stated that if Hall would provide the necessary replacement parts, Hodgdon would pay for the labor to put the tractor in working order but that Hodgdon wanted the work done at a garage of his own selection. Hall did not reply to this letter.

About three months after this letter was written Hodgdon took the tractor to a garage in Barre for repairs. It was there put in good working order and Hodgdon took it to his farm and has used it quite regularly since that time.

Hodgdon never returned to Hall or Cassady any of the defective parts of the tractor.

A short time after the tractor had been repaired in Barre Hodgdon's attorney wrote Hall stating that because of the latter's refusal to either put the tractor in good working order or refund the purchase price Hodgdon had been obliged to have the tractor repaired elsewhere and a demand was made for reimbursement of the expense of the repairs. Hall replied to this letter refusing the demand and stating his reasons therefor. This apparently ended the matter until suit was brought.

The chancellor stated he was unable to find that the paper given by Cassady to Hodgdon was given and received under a mutual mistake of fact and that it was intended only to be a receipt. The instrument in question contains the essential elements of a contract of sale and we treat it as such. Both parties so consider it in their briefs.

The plaintiff claims that the sole agreement on his part contained in the "Warranty and Agreement" provision in the contract relates to the furnishing of new parts. The defendant contends that the warranty is not limited to a mere replacement of defective or broken parts but is a general warranty that the machine will work properly. It is not necessary, however, to decide this question as the result here reached would be the same under either construction of this provision.

It is clear that if the warranty is limited as claimed by the plaintiff the defendant cannot recover any damages resulting from defective parts as the plaintiff only agreed in the contract to furnish free of charge new parts to replace defective ones and then only upon condition that the defective parts be promptly returned. This condition has not been complied with as the findings show that the defendant has never returned any of the defective parts of the tractor.

The defendant, however, claims a breach of a general warranty and that the cost of new parts to replace defective ones, together with the cost of installing the same, are proper items to be included in the amount of damages awarded for a breach of that warranty. From the findings and the amount of the judgment it is apparent that the trial court adopted the defendant's theory in this respect. But if the defendant's position that there is here a general warranty and that the agreement as to new parts is included in such warranty as a component part thereof be taken as correct, the defendant is barred from recovering for the breach of the same by the contract provision that, "Retention of possession or continued use shall constitute an acceptance and satisfaction of warranty."

It was competent for the parties to contract with each other in relation to the extent, terms and conditions of warranty and to impose such limitations and restrictions thereon as they might mutually agree upon. *Brown* v. *Russell,* 105 Ind 46, 4 NE 428. The above provision and the one relating to the return of defective parts are valid and binding upon the parties to the contract.

*Boughton* v. *Standish*, 48 Vt 594, 599; *Knight* v. *Merritt Engineering & Sales Co.*, 151 SC 303, 149 SE 20; *Meredith* v. *J. A. Fay & Egan Co.*, 36 Ga App 506, 137 SE 409; *D'Arcy Spring Co.* v. *Ansin*, 196 Ind 98, 146 NE 214; *McPherson* v. *Gullett Gin Co.*, 134 Miss 771, 100 S 16; *J. A. Fay & Egan Co.* v. *Roseland Box Co.*, 170 La 602, 128 S 649; *Taber* v. *Beaudette & Graham Co.*, 262 Mass 99, 159 NE 505; *Fred W. Wolf Co.* v. *Monarch Refrigerating Co.*, 252 Ill 491, 96 NE 1063, 50 LRANS 808; 55 CJ 804, sec. 785; *Zimmerman Mfg. Co.* v. *Dolph*, 104 Mich 281, 62 NW 339.

The findings show that Hodgdon after two trials of the tractor discovered the various defects in it and returned it to Hall stating that it was not satisfactory and demanding his money back. This demand was refused and the tractor was left at Hall's garage. If the matter had rested there, a different case would, no doubt, have been presented. But after an exchange of letters by attorneys for both parties Hodgdon came and took the tractor to his farm. The findings clearly show that from that time on Hodgdon has not only continued in possession of the machine but has continued to use it. Thus by the terms of the contract the tractor was accepted by the defendant and the general warranty claimed by the defendant was satisfied.

Strictly speaking the right of the defendant to recover for a breach of the warranty is barred by the application of the above quoted contract provision to the facts in the case. *J. A. Fay & Egan Co.* v. *Roseland Box Co.*, 170 La 602, 128 S 649. This reason for the bar to recovery is set forth in other cases but it is quite generally stated in those having to do with contract provisions similar to the one here that by retention of possession or continued use of the chattel the vendee has waived his right to assert a breach of warranty or that he is estopped by the provision from claiming a breach. The result reached is the same regardless of the particular theory upon which it is based. See the authorities above cited.

No question of reasonable time for a return of the tractor is here involved as the findings show that after it was last taken by Hodgdon it has never been returned.

The defendant says that since the retention and use of the tractor after it had been returned to Hall the second time and the purchase price demanded back was induced by Hall, there was no waiver or satisfaction of the warranty. But the findings show that

Hodgdon was not induced by any act or word of Hall to take the machine. Thus the cases cited by the defendant on this point do not apply.

The defendant also contends that in view of Hall's claim that the tractor was not warranted and the latter's whole attitude in the matter, as especially evidenced by his attorney's statement that the tractor was at the garage subject to the call and risk of Hodgdon, it would have been useless to have returned the machine or the defective parts. The defendant argues it must follow that he lost no rights by his failure to return the tractor after its use for the two or three days in skidding logs. In support of this contention the defendant relies on *Land Finance Co.* v. *Sherwin Electric Co.,* 102 Vt 73, 83, 146 A 72, 75 ALR 1025. That case involved the question of rescission. We merely held in that part of the opinion upon which the defendant relies that when a person has offered to rescind a contract and the offer is refused, the one making the offer is not required to return the property covered by the contract. For various reasons the holding there is not in point here.

It is true that the law does not require one to do a useless act. But here the parties had expressly agreed upon the legal effect of retention of possession or continued use of the tractor in respect to the right to recover for a breach of warranty. In spite of this provision, Hodgdon chose to retake the tractor after he had returned it as defective and demanded back the purchase price. At that time the claims of both parties in respect to liability for breach of warranty were stated and later more fully set forth by their attorneys. The returned tractor was in Hall's garage. When Hodgdon took it from the garage for the last time he took it at the peril of having this provision in the contract relied upon in defense of a claim for breach of warranty. The findings do not show that Hodgdon made any attempt to return the tractor after he had used it in skidding logs, but if it be assumed that Hall would not after that time have taken back the machine, so in that view of the matter it would have been useless for Hodgdon to have then returned it in order to attempt to avoid the application of the contract provision of retention and use, it is sufficient to say that this situation had been brought about by Hodgdon's own voluntary act of retaking the tractor. Consequently Hodgdon is not entitled to the benefit of the above stated rule for it must be apparent that

when a person has of his own accord, and with full knowledge of the consequences, placed himself in a situation in which it would be useless for him to do an act required on his part, he cannot invoke the rule as a defense to the claim of failure to perform that act.

Moreover, if we assume that under certain circumstances a refusal to receive the tractor would have released Hodgdon from the contract provision of retention of possession of the same, it is impossible to perceive any reason why the fact that it would be useless to return the machine would affect the provision as to continued use.

What we have just said in regard to the defendant's claim that it would have been useless for him to have returned the tractor applies largely and with equal force to his situation in respect to the provision in the contract relating to a return of defective parts.

*Decree reversed, with costs in this Court to the plaintiff, and cause remanded for the entry of a decree in accordance with the views herein expressed.*