**MOTION PICTURES FOR TELEVISION,** Inc., a foreign corporation, Plaintiff and Respondent,

v.

**NORTH DAKOTA BROADCASTING COMPANY,** Inc., a North Dakota corporation, Defendant and Appellant.

No. 7674.

Supreme Court of North Dakota.

Feb. 3, 1958.

Joseph J. Funke, Minot, for appellant.

Waldron & Kenner, Minot, for respondent.

BURKE, Judge.

This is a suit to recover upon a contract licensing the exhibition of motion pictures. In its complaint the plaintiff alleged that it entered into a contract with the defendant on March 9, 1953, to furnish the defendant a sufficient number of motion picture films for twenty hours of exhibition a week for a period of two years commencing with the first week in April 1953; that for the right to exhibit such motion pictures the defendant agreed to pay the plaintiff the sum of $300 a week; that plaintiff fully performed all of its obligations under the contract until prevented from further performance by defendant's repudiation and breach of the contract on October 21, 1954; that the sum of $14,127.75 was due and owing to the plaintiff from the defendant upon said contract. In its answer the defendant, for its defense, alleged breach of warranty and, by counterclaim, alleged damages for breach of warranty in the sum of $17,179.50. Trial of the case resulted in a verdict and judgment for the plaintiff in the sum of $7,894.35. The defendant has appealed from the judgment.

The errors specified by the defendant upon this appeal relate to a denial of its motion for a mistrial and to the admission of certain evidence during the trial. It is plaintiff's principal contention upon this appeal that the matters specified by the defendant as errors, even if errors in fact were not prejudicial for the reason that upon the whole record the plaintiff was entitled to judgment as a matter of law at least in the amount set forth in the verdict and judgment. If plaintiff is correct in this contention, it will dispose of this appeal and we will therefore give it consideration first.

The evidence conclusively establishes that the plaintiff furnished a film service to the defendant for a period of 78 weeks under a contract which called for a payment by the defendant to the plaintiff of the sum of $300 a week plus a five per cent fee upon some of the films which was designated in the contract as the "Petrillo Fee". It was also established without contradiction that the defendant used this service and exhibited the motion pictures furnished for the full period of 78 weeks and that it was not until the end of this 78-week period that defendant served notice that it was breaking the contract which, by its terms, was to run 104 weeks. It was also undisputed that defendant had paid for the service for 52 weeks only and that there was due to the plaintiff according to the contract the sum of $300 a week for 26 weeks or $7,800 and "Petrillo Fees" in the sum of $94.35.

■ The jury's verdict and the judgment were for the sum of $7,894.35 or for the exact amount due, under the contract, for films actually delivered to and accepted by the defendant. No award whatever was made for any damages because of defendant's repudiation of the contract and its refusal to accept films during the last 26 weeks of the contract's term. It is clear therefore that plaintiff is entitled to judgment, as a matter of law, at least in the amount set forth in the judgment, unless the evidence adduced by the defendant showed damages for alleged breach of warranty sufficient to make the issue of damages and the amount thereof questions for the jury.

In its counterclaim the defendant alleged breach of warranty because (1), a large number of films furnished were physically unfit for exhibition and (2), because the story content of many of the films was of inferior quality and in some cases morally unfit for exhibition. It is also alleged that because of the inferior quality of the films it was unable to sell them to sponsors; that it was therefore unable to recoup any of the purchase price of $17,179.50 it had paid for films during the first year of the contract term and that therefore it was damaged in the sum of $17,179.50.

We shall consider the evidence as to physical defects in the films first. The physical defects complained of were defective sprocket holes, defective splices, sections of blank film which caused "blackouts" and blurred or "scratchy" sound tracks. There is testimony in the record that about fifty per cent of film received was affected to a large or small extent by some of these defects. The defective sprocket holes and splices caused interruptions in the exhibition of the films and these interruptions and other defects caused dissatisfaction among television viewers and made it impossible for the station to secure sponsors for the films.

There are two provisions in the contract relating to physically defective films. Paragraph Five of the contract provides:

"The Distributor (plaintiff) agrees to deliver to the Station a positive, synchronized print of each Picture for exhibition as specified in the schedule, which print shall be in all respects physically suitable for exhibition. * * *"

Paragraph Six of the contract provides:

"Upon receipt of each positive print the Station agrees to examine the said print to determine whether it is physically suitable for exhibition. If it shall be determined that the said print is not physically suitable for exhibition, the Station shall give immediate notice to the Distributor of any defect, upon the receipt of which notice the Distributor shall remedy such defect or make timely substitution of a physically suitable substitute print."

A consideration of these paragraphs forces the conclusion that the warranty of physical suitability of the films was a limited one and that the parties contracted as to what the remedy for a breach of that warranty should be. It was admitted by the defendant that no demand was ever made on the plaintiff to replace a physically defective film as provided by Paragraph Six of the contract. It was also admitted that at no time did defendant make adequate inspection of the films before an attempt was made to exhibit them. Mr. Amoo, one of the witnesses for the defendant, testified that the defendant did not inspect the films at all for some time after its contract with the plaintiff had become effective and that thereafter what inspection was made, was made not by the use of a sound projector but by the use of a viewer; that the use of a viewer would disclose none of the defects on the sound track and that many of the defects in sprocket holes and splicing would be missed because the film is not pulled through the viewer by gears acting in the sprocket holes but by a take off reel. Mr. Amoo also testified that much of the difficulty could have been avoided if the films had been properly inspected.

A provision in a sales contract limiting the rights of the buyer in case of the breach of a stipulated warranty is valid and enforceable. Palaniuk v. Allis-Chalmers Mfg. Co., 57 N.D. 199, 220 N.W. 638; Holden v. Advance-Rumely Thresher Co., 61 N.D. 584, 239 N.W. 479. Where a contract of sale requires the buyer to inspect the goods purchased for specified defects; to give notice of any such defects found to the seller and to afford the seller an opportunity to replace the defective goods, and the buyer fails to make adequate inspection of the goods and to give the required notice to the seller, he cannot recover for breach of the specified warranty. 77 C.J.S. Sales §§ 340, 341, pp. 1235, 1236; Morris & Co., Inc., v. Power Mfg. Co., 6 Cir., 17 F.2d 689; Whitaker v. Cannon Mills Co., 132 Conn. 434, 45 A.2d 120; Harrell v. International Harvester Co., 70 Ga.App. 655, 29 S.E.2d 427; Estein v. Wolff, La.App., 14 So.2d 789; DeWitt v. Itasca-Mantrap Co-op Electrical Ass'n, 215 Minn. 551, 10 N.W.2d 715; Hall v. Hodgdon, 114 Vt. 63, 39 A.2d 195.

By analogy the law applicable to sales contracts should logically apply to a contract of bailment and license such as the one under consideration in this case. Williston on Contracts, Rev.Ed., Sec. 1041, p. 2907. It follows that, under the evidence, the defendant has established no right to

recoupment for a breach of warranty of physical suitability.

Defendant has also alleged breach of warranty with respect to the story content of the films furnished. Specifically it states that some of the films furnished were morally objectionable and others lacked interest because of their old age. There is no express warranty in the contract with respect to story content. Attached to the contract is a complete list of the films to be furnished. This schedule lists some 600 feature films and "westerns" and in addition a large number of short pictures. Using these pictures the defendant exhibited three features, including one "western" each day. The implied warranty as to fitness for the use known to be intended could not be extended to include a warranty that all 600 to 800 pictures would appeal to the varying tastes of the viewing public. In the very nature of the business such a list would include family pictures, pictures primarily for adults, good pictures, dull pictures and some that were completely boring. Nevertheless, assuming there was a breach of warranty as to content with respect to some of the pictures there is still no adequate proof of damages. The proper measure of damages for breach of warranty as to quality, where the subject matter of a contract is accepted and used, is the difference between the contract price and the actual value of the article accepted. 8 C.J. S. Bailments § 55, p. 369. See also, Cox v. Greenlease-Lied Motors, 134 Neb. 1, 277 N.W. 819; Commercial Finance Co. v. Patterson, 182 Okl. 411, 77 P.2d 1133; Jones v. Pittsburgh Plate Glass Co., 246 Wis. 462, 17 N.W.2d 562. No attempt, whatever, was made to prove such a measure. Defendant's theory apparently was that the proper measure of damages was the difference between the contract price and the advertising income it received by securing sponsors of the films furnished by the plaintiff. In other words, defendant said that since it received no income from the sale of the pictures, they were worth nothing at all. In support of this contention defendant offered the testimony of its sales manager who testified that he was unable to sell in excess of $100.00 participation in the films provided by the plaintiff. He testified that the reasons for not buying given by prospective advertisers were, that the coverage of the station did not justify the cost and that the films were defective in physical quality and inferior in content. None of the records of the company with respect to advertising sales was offered in evidence and none of the advertisers testified. The implied warranty of fitness for use cannot be construed as a warranty that defendant would sell advertising participation in the exhibition of the films in any amount. Testimony as to the defendant's inability to sell advertising would be material only to corroborate testimony as to how much a breach of a specific warranty had reduced the value below the contract price. Here the evidence is that the films were unsaleable for several reasons, one of which was the poor quality of the picture content. This evidence certainly forms no basis for estimating the amount of damage due to a breach of warranty of the quality of picture content, if there was such a warranty. While defendant was not required to prove his damages to the dollar, it was required to furnish some basis of computation. Broadway Photoplay Co. v. World Film Corporation, 225 N.Y. 104, 121 N.E. 756.

It follows from what we have said above that plaintiff was entitled to judgment as a matter of law in the amount awarded and that the errors specified by defendant, if error in fact, were not prejudicial. The judgment of the district court is therefore affirmed.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.