**F & S CONSTRUCTION COMPANY, an Arizona corporation, Appellant,**

v.

**Emil BERUBE and Ellen Berube, Appellees.**

**No. 7130.**

United States Court of Appeals Tenth Circuit.

May 27, 1963.

Rehearing Denied Oct. 16, 1963.

William E. Kenworthy, Denver, Colo. (Fugate, Mitchem, McGinley & Hoffman, Denver, Colo., on the brief), for appellant.

Robert G. McIlhenny, Denver, Colo., for appellees.

Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.

SETH, Circuit Judge.

The appellees filed an action for breach of warranty and for negligence against the appellant which had sold a lot and constructed a house for them. The case was heard by the court and judgment was given for the plaintiffs-appellees on the ground of breach of implied warranty of fitness, and this appeal has been taken.

The record shows that the contract between the parties stated in part that appellees had paid a certain sum as earnest money and part purchase price of "Block 51, Lot 21, of the Thornton Addition House Style 9CAE, as shown by plans, specifications and other pertinent data examined by purchaser in Sales Office of Seller and on file in the applicable V.A. office, File No. ——." The stated purchase price was for the house and the lot together without any allocation between the two. This agreement provided for the completion of the house within ninety days from the beginning of construction, and that it be built in accordance with Veterans Administration regulations. It also stated that the Veterans Administration final inspection and approval would constitute proof of performance by the seller. The house was so examined and approved. A warranty deed was delivered to appellees, and they took possession on April 30, 1955. At the time of the conveyance, appellant

also delivered a warranty agreement which provided that the house had been built in accordance with the plans and specifications. This warranty further recited that it was in addition to all other rights and privileges which appellees had under any other law and would survive the conveyance.

Four or five months after possession had been given cracks appeared in the walls of the house. These were repaired several times, but thereafter floors became uneven, other cracks developed, and the cupboards and window frames were twisted. The record shows and the trial court found that the construction was in accordance with the plans and specifications and with Veterans Administration regulations. The cracks in the walls, the disarrangement of the floors, and other damages were caused by the nature and condition of the soil on which the house was constructed. This soil contained a clay which swelled and heaved when it became moist. The changes in the moisture content of the clay were brought about by rainfall and by irrigation of lawns and shrubs. Appellant had engaged a skilled soil engineering consultant to give an opinion on soil conditions before construction started. This expert reported that the proposed foundations were satisfactory and that no soil stabilization was necessary.

The first of the principal points raised by the appellant is that this transaction was a sale of real estate, and that there can be no implied warranty as to fitness in such a sale. As to this point appellant states in its brief that there appears to be no authority from Colorado courts which is directly in point. The appellant however refers to two recent Colorado cases which it believes indicate that there is no implied warranty in the sale of new housing in Colorado. The first of these cases is Cohen v. Vivian, 141 Colo. 443, 349 P.2d 366, 80 A.L.R.2d 1448. This was a suit for rescission for fraud. The plaintiff had contracted to buy a house which was then under construction. The house was built on filled ground, and after its completion serious damage was

caused by subsidence. The court found that the cause was a latent soil defect of which the seller had knowledge and was under a duty to disclose. The court said, "His failure to disclose amounts to concealment, making him vulnerable to a suit based upon fraud." The court decided the case entirely on the question of fraud, and did not discuss implied warranty of fitness. The second Colorado case cited by the appellant as having a bearing on this point is Denver Business Sales Company v. Lewis, Colo., 365 P.2d 895, in which the damage was also caused by soil conditions. The complaint was for fraud with a second claim for breach of warranty. The claim for breach of warranty was dismissed during trial leaving the action to be tried on fraud alone. The court discussed the proper instructions to be given in cases of false representations, and stated: "The sole issue submitted to the jury was that of the alleged fraud." These cited cases do not decide nor discuss implied warranty. The fact that the court decided them both on the basis of fraud does not show that the doctrine of implied warranty of fitness is non-existent in Colorado as appellant urges.

There is no evidence whatever that the appellant knew that the condition of the soil would cause the results which here followed. The court made no finding of negligence or that the workmanship of the appellant was defective. There is no issue of fraud here, only an action on implied warranty of fitness.

Many authorities from jurisdictions other than Colorado are cited in both briefs. The general conclusion derived from these authorities is that the courts usually hold where the contract of sale is entered into after the house is completed, the transaction is as a sale of real estate, and there are no implied warranties in such a sale. However in instances where the house has not been commenced or only a small amount of work has been done upon it at the time of the contract, the tendency of the courts is to consider the agreement to be one for construction rather than for the sale of

real estate. When this latter determination has been made, the doctrine of implied warranty in the sale of real estate is not met. Instead warranties related to construction contracts are discussed. Many of such cases then hold that an implied warranty of fitness arises. Appellant as part of this point also urges that there can be no implied warranty beyond the then state of the art. This relates to the fact that appellant before starting construction had the soil tested as described above. Appellant argues that the science of soil engineering was not then as well developed as it is now, and the damages which resulted here could not have been foreseen. Appellant then urges that since this was the state of the art of soil mechanics, it should not be held liable for these damages on an implied warranty.

As indicated, there is no authority from the courts of Colorado on the points discussed above. Under these circumstances this court has stated on a number of occasions that it will accept the determination made by the trial court as to local law unless clearly convinced to the contrary. It was so held in Dallison v. Sears, Roebuck & Co., 313 F.2d 343 (10th Cir.), filed in December 1962, and in Mitton v. Granite State Fire Ins. Co., 196 F.2d 988 (10th Cir.), and cases cited therein. The decision of the trial court as to these points is certainly well within the general authorities on the subjects discussed above, and we are certainly not convinced to the contrary.

Appellant's next point raises the question whether in Colorado there is an implied warranty of fitness when there is an express warranty that the house be built according to certain plans and specifications. An express warranty does not necessarily exclude implied warranty unless the two are not consistent or unless they both cover the same matter or subject. Annot., 164 A.L.R. 1321. In the instant case the express warranty was fulfilled, but the condition of the soil which caused the difficulty was not mentioned. The soil was a different subject from the details of construction, although had the ultimate effect of the clay been known, different foundation specifications would have been provided. Appellant here cites Oil Creek Gold Mining Co. v. Fairbanks-Morse and Co., 19 Colo.App. 142, 74 P. 543, which concerned the sale of a compressor with the express warranty that it worked and was reliable in its work. The purchaser wished to prove there were also oral warranties that it would perform a particular job at a stated altitude, but the trial court would not receive such evidence. The Colorado appellate court held the trial court was correct, and that under these circumstances the whole understanding was merged in the written agreement which could not be varied by parol evidence. The court also stated that a particularly described machine was ordered, and hence there was no warranty of fitness. The case therefore really concerned only the proof of warranties of fitness allegedly made in an oral agreement. The court would not permit proof of such an oral agreement under the parol evidence rule. Thus the question at hand was not there decided. In the case at bar the express warranty contained an exception that it was in addition to and not in derogation of other rights and privileges of appellees, thereby indicating an intention to preserve implied warranties. Further the "defect" in the case before us relates to a matter not touched on by the express warranty, and is a subject different from the specifications and plans, so we are not convinced the trial court was wrong in finding there was a warranty of fitness. The statement above as to the determination of the trial court as to local law in the absence of local authorities applies here as well.

The trial court found that this action was not barred by limitations and this in our opinion is correct. The applicable statute of limitations is Chapter 87, Article 1, Section 11 of Colorado Revised Statutes of 1953, which is sufficiently broad to encompass this action on an implied warranty.

Appellant complains of the nature of the evidence as to damages, and of the

qualifications of the witness who testified on this matter. The record shows however there is substantial evidence to support the findings on damages, and as to the second point the trial court properly exercised its discretion as to the witness's qualifications.

Affirmed.