Broadway Photoplay Company, Respondent, *v.* World Film Corporation, Appellant.

**Contract — damages — action for breach of contract to furnish first run of " feature " motion picture films — erroneous admission of evidence to prove damages — insufficient evidence.**

1. The defendant undertook to supply the plaintiff with motion picture films for a stated period. The pictures were to be exhibited at the plaintiff's theatre and were to be of the order known as the first run of " feature " pictures. The contract having been broken by the defendant, the plaintiff unsuccessfully attempted to procure first-run pictures elsewhere. It has sued to recover profits alleged to have been lost, and a verdict in its favor has been unanimously affirmed. *Held,* that the plaintiff was improperly permitted to prove its receipts from other pictures, supplied by other producers, before the breach and after.

2. The jury was charged that the plaintiff was " limited to the difference in value between first-run feature pictures and second or third-run feature pictures, and not to the difference between feature pictures and other pictures." *Held,* that while the comparison must be between feature pictures and feature pictures of the first-run and feature pictures of later runs, there is nothing in the evidence to supply a basis for such comparison, and that the motion to strike out the evidence offered for that purpose was erroneously denied.

3. Experts were permitted to show their experience in other theatres in other sections of the city which were run under different conditions of competition. *Held,* that the comparison was misleading, and the admission of the evidence erroneous.

*Broadway Photoplay Co. v. World Film Corp.,* 175 App. Div. 980, reversed.

(Argued December 12, 1918; decided January 7, 1919.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 20, 1916, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*I. Maurice Wormser* and *Nathan Vidaver* for appellant. The judgment is contrary to law as plaintiff's prospective

profits upon new motion pictures never previously produced are entirely too problematical and conjectural to be the subject of recovery. The prospective profits were, therefore, not a proper element of damages, and the defendant's exceptions along this line were well taken, as the prospective profits were ascertainable by no legally probative means. Whether the new pictures would have succeeded in plaintiff's theatre, and to what extent, is entirely problematical, and plaintiff should not have been permitted to recover beyond its actual financial outlay. (*Bernstein* v. *Meech,* 130 N. Y. 354; *Cutting* v. *Miner,* 30 App. Div. 457; *Cramer* v. *Grand Rapids Show Case Co.,* 223 N. Y. 63; *Moss* v. *Tompkins,* 69 Hun, 288; 144 N. Y. 659; Frohlich & Schwartz, The Law of Motion Pictures & The Theatre, 149, 150; *Todd* v. *Keene,* 167 Mass. 157; *American Hungarian Pub. Co.* v. *Miles Bros.,* 68 Misc. Rep. 334.) Reversible error was committed in receiving the testimony of plaintiff's witness as to what happened in the Savoy Theatre and in other theatres under different conditions and at different scales of prices, since such testimony was *res inter alios acta,* incompetent, irrelevant and immaterial, and could only serve to mislead the jury and to confuse it. Such evidence was altogether collateral, and it was serious and reversible error to receive it. (*Moss* v. *Tompkins,* 69 Hun, 288; 144 N. Y. 659; *Todd* v. *Keene,* 167 Mass. 157; Frohlich & Schwartz, The Law of Motion Pictures & The Theatre, 153; McKelvey on Evidence [2d ed.], 169; Chase's Stephen's Digest of the Law of Evidence [2d ed.], 37.)

*S. C. Sugarman* for respondent. All of the rulings of the trial court, on the evidence offered, and upon the motions made by defendant, and on its requests to charge were proper, in view of the law governing the proof of damage in this case. (*Wakeman* v. *Wheeler,* 101 N. Y. 205;

*Stevens* v. *Amsinck*, 149 App. Div. 220; *Nash* v. *Thousand Islands*, 123 App. Div. 148; *Peltz* v. *Erchele*, 62 Mo. 171; *Hitchcock* v. *Knights*, 100 Mich. 40.) From the evidence in the whole case, the legitimate inference, amounting to a reasonable certainty, may be deduced that plaintiff's damage was the natural and proximate result of the breach of the contract. (*U. S. Trust Co.* v. *O'Brien*, 143 N. Y. 284; *Witherbee* v. *Meyer*, 155 N. Y. 446; *Stevens* v. *Amsinck*, 149 App. Div. 220; *Bates* v. *Holbrook*, 89 App. Div. 548.) There was evidence sufficient in law to permit the jury to indulge in reasonable conjectures and make probable estimates in order to approximate the damage occasioned by the breach of the contract. (*Wakeman* v. *Wheeler*, 101 N. Y. 105; *Stevens* v. *Amsinck*, 149 App. Div. 220; *Nash* v. *Thousand Islands*, 123 App. Div. 148; *Napier* v. *Spielman*, 54 Misc. Rep. 105; *Crittenden* v. *Johnson*, 7 App. Div. 258; *Taylor* v. *Bradley*, 39 N. Y. 129; *Bates* v. *Holbrook*, 89 App. Div. 557; *Benyakar* v. *Scherz*, 103 App. Div. 194; *Mortimer* v. *Otto*, 206 N. Y. 91; *Butler* v. *Manhattan*, 143 N. Y. 422; *Swain* v. *Schieffelin*, 134 N. Y. 471.)

Cardozo, J. The action is for breach of contract. For a valuable consideration, the defendant undertook to supply the plaintiff with motion picture films one day in each week for fifty-two weeks beginning October 1, 1914. The pictures were to be exhibited at the plaintiff's theatre. They were to be of the order known as " feature " pictures. The line of division between feature pictures and others may not be easy to define, yet in practice those engaged in the business seem to have little difficulty in drawing it. But the plaintiff was not only to have feature pictures. It was to have the first run of them. This means that the pictures must not have been exhibited before in the immediate locality. The locality is described as the neighborhood of Broadway

from Ninety-sixth street to One Hundred and Eighth street in the city of New York. The contract was made in September, 1914. It was no sooner made than broken. The defendant found in one of the plaintiff's competitors a more profitable exhibitor. It refused to supply the plaintiff with first-run pictures. It offered to supply feature pictures, but they were of the second and later runs. They had already been exhibited at other theatres in the neighborhood. The plaintiff attempted to procure first-run pictures elsewhere, but with slight success. It has sued to recover profits alleged to have been lost; and a verdict for $4,500 has been unanimously affirmed.

We think there was error fatal to the judgment in rulings upon evidence received as proof of damage.

The plaintiff was permitted to prove its receipts from other pictures, supplied by other producers, before the breach and after. This evidence was received under objection and exception, but subject to motion to strike out. The motion was later made, with adequate statement of the grounds, and an exception was noted to the denial. The point is fairly raised, and we must determine whether it was error to permit the evidence to stand. The plaintiff's theory is that a jury, analyzing its receipts, would discover uniformities and averages from which the profits of first-run pictures might be approximately measured. Little depends, it is said, upon the ultimate popularity of the pictures as disclosed by later runs. The bait of novelty suffices at the outset. Later runs may involve appeals to experience, but first runs are appeals to faith. The public accepts the offering upon the credit of the producer. Herein, it is argued, is the distinction between the moving picture and the drama. No one can compute in advance the earnings of unknown plays (*Bernstein* v. *Meech*, 130 N. Y. 354). But the argument is that the good-will built up by a producer will give to the first productions of his pictures

a uniform return. The certainty or uncertainty of the damages must vary, it is said, with the proved conditions of the business.

It is true, of course, that the conditions of a business affect the possibilities of proof and thus the measure of recovery. No formula can be framed, regardless of experience, to tell us in advance when approximate certainty may be attained. The rule of damages must give true expression to the realities of life. We do not need to determine what the plaintiff's rights would be if it were able to establish the uniformities which it asserts. The sufficient answer is that it has failed utterly to establish them. It did succeed in showing that " feature " pictures were more profitable than others. That is, indeed, the proposition to which the bulk of its evidence was directed. The difference, however, was not constant or even approximately constant. It was subject to the widest fluctuation. Quality counts, it seems, with pictures as with plays. But the plaintiff did not prove its damages by proving the superiority of feature pictures. The defendant was ready to supply feature pictures. They could have been obtained also, for all the evidence shows, from others. The comparison must be between feature pictures of the first run and feature pictures of later runs. The jury were so charged. They were charged that the plaintiff was " limited to the difference in value between first-run feature pictures and second or third-run feature pictures, and not to the difference between feature pictures and other pictures." But there is nothing in the evidence to supply a basis for the comparison. No law of averages, no constant or approximate uniformity of returns, can be gathered by induction from the sporadic and varying instances scattered through this record. The pictures of the first run are few in number. They disclose no semblance of equality in their returns when compared with one another. They disclose a

like diversity when compared with pictures of later runs. In this business, as in others, there are times when merit triumphs over novelty. Pictures acquire in one neighborhood a vogue that follows them into another. The indifferent show succeeds by force of the reputation of the actor. The results have all the endless variety of human tastes and fashions. To discover beneath these vagaries a unifying law of averages would be a task in any case. The task is hopeless here where only one day a week is covered by the contract. The plaintiff tries to avoid the difficulty by attributing to the defendant all the losses of the business from one week-end to another. The fanciful theory is advanced that the public will flock to poor shows on six days of the week if there is a good show on the seventh. There can be no stable foundation for a verdict that is built on such assumptions. Nothing but guesswork can place the damages at $4,500 or any other fixed amount.

In these circumstances, there was error in the denial of the defendant's motion to strike out the evidence of the profits and losses of the business. It had been received under objection, and had no place in the record unless connected with the breach. The plaintiff was not required to prove its damages to the dollar (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205). It was required, however, to supply some basis of computation (*Bernstein* v. *Meech, supra; Todd* v. *Keene*, 167 Mass. 157; *Cramer* v. *Grand Rapids Show Case Co.*, 223 N. Y. 63); and this it did not do.

There were other errors of a like nature. Experts were permitted to show their experience in other theatres. They told how profits had risen fifty per cent when first-run pictures were exhibited to the exclusion of all others. These theatres were in other sections of the city. They were run under different conditions of competition, with rival houses across the street. Their display of first-run

pictures was daily. Only once a week were such pictures exhibited by the plaintiff. The comparison was misleading, and the admission of the evidence erroneous (*Todd* v. *Keene, supra; Moss* v. *Tompkins*, 69 Hun, 288; affd., 144 N. Y. 659).

The judgment should be reversed, and a new trial granted, with costs to abide the event.

Hiscock, Ch. J., Chase, Collin, Cuddeback, Pound and Andrews, JJ., concur.

Judgment reversed, etc.