CATHERINE MURPHY, Plaintiff, *v.* MOLLIE LIFSCHITZ et al., Defendants.

Supreme Court, Special Term, New York County, June 18, 1944.

*Harold L. Strelzin* for plaintiff.

*A. Harry Weissman* for defendants.

BENVENGA, J. Action in equity for the specific performance of an agreement for the sale of a stock of liquor or, in the alternative, for damages.

The agreement was entered into September 20, 1943, between plaintiff, the holder of a retail liquor license, and defendants, whose license had been revoked. Under the agreement, plaintiff agreed to pay the invoice price, plus other charges. The sale was subject to a lien and was scheduled to close at the office of the lienor. A few hours before the time set for closing, defendants notified the broker that they would not sell the liquor, unless plaintiff paid the " market " price. Instead of performing their part of the agreement, defendants took advantage of rising prices and disposed of the liquor in the black market. Therefore, the only question presented is the amount of damages to which plaintiff is entitled.

Concededly, the measure of damages is " the loss directly and naturally resulting in the ordinary course of events " (Personal Property Law, § 148, subd. 2). Plaintiff urges that, as defendants knew she was engaged in the retail liquor business and was buying the stock of liquor for resale over the bar, she is entitled to the loss of profits occasioned by the default of the defendants. However, assuming that that is not the proper measure of damages, plaintiff argues she is entitled to the difference between the contract price and the sum realized on the resale of the liquor. Defendants, on the other hand, contend that the measure of damages is the difference between the contract price and the market price of the liquor at the time of the breach of the contract.

It is well established that, where a contract of sale is repudiated, the measure of damages is the value of the contract or of the goods involved to the buyer. This includes, as proper elements of damages, losses sustained and gains prevented (*Wakeman* v. *Wheeler & Wilson M'f'g. Co.*, 101 N. Y. 205, 209–210). " For a wrong, the law's ideal, not always realized, is compensation, neither more nor less. Theoretically the loss to an injured party because of a broken contract is its value to him " (*Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134, 136). The complaining party is required to prove the value of the contract with " reasonable " certainty (*Orester* v. *Dayton Rubber Mfg. Co., supra,* pp. 138, 139), and not with mathematical exactness or precision (*South Chester Tube Co.* v. *Texhoma Oil & Refining Co.*, 264 S. W. 108, 111 [Tex. Civ. App.]). He is not required to prove his damages " to the dollar ", but is required " to supply some basis of computation " (*Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104, 109). " ' The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Diffi-

culty of ascertainment is no longer confused with right of recovery.' " (*Story Parchment Co.* v. *Paterson Co.*, 282 U. S. 555, 565–566.) " The party who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong by insisting on proof which, by reason of his breach, is unobtainable " (*South Chester Tube Co.* v. *Texhoma Oil & Refining Co., supra*), for the principle is fundamental that no man shall be permitted to profit by his own wrong. (*Riggs et al.* v. *Palmer et al.*, 115 N. Y. 506, 511; *People* v. *Schmidt*, 216 N. Y. 324, 341.)

It would seem that the value of the contract to the plaintiff is either the amount she would have realized on the sale of the liquor over the bar or the sum which defendants actually realized on the resale of the liquor. There was evidence as to the profits which plaintiff would have realized on the sale of the liquor over the bar. That evidence, in my opinion, is " wholly speculative and incapable of reasonable ascertainment " (*Carnera* v. *Schmelling*, 236 App. Div. 460, 462). It depends on too many elements of an uncertain and contingent nature. The plaintiff has but one bar and grill. Apparently, she has been catering to the same class of customers and has been doing approximately the same amount of business and earning at least the same amount of profits as in previous years. Though she may not have enough, or any of the particular brands herein involved, her business, for all that appears, has not suffered. She is in the same predicament as many other dealers. Liquor may be had and is being sold. She is still in business, and there is no evidence that she will be compelled, in the near future, to go out of business or sustain losses because of a shortage of a supply of liquor.

On the other hand, the sum which defendants realized on the resale of the liquor is not uncertain or speculative. It is the best evidence of the market value or the value of the contract to the plaintiff. Therefore, a measure of damages which would compel defendants to pay over the difference between the contract price and the resale price is just and equitable. If the defendants have been unjustly enriched by reason of their wrongdoing, they should not be permitted to profit thereby.

True, there may be difficulty in the matter of proof. Defendants, who had been in the retail business, had been out of business for a few months. They wanted to dispose of their stock of liquor, but could no longer sell it except upon a special permit issued by the State Liquor Authority (Alcoholic Beverage Control Law, § 99-b). Instead of obtaining such a permit, they

arranged with the bank which had given them a loan, with the liquor as security, to make a loan to the new purchaser. As a result, $14,332.99 changed hands. Of this, $7,260 was used to pay off defendants' outstanding loan, and $7,072.99 in cash was deposited in the bank to the account of the defendants. Their testimony that $2,300 of the cash deposited were moneys they had in a vault, as well as most of their other testimony, is utterly unworthy of belief. There is no credible explanation of the source of the cash deposit other than that it is the proceeds of the resale.

True, as defendants contend, there is no direct proof as to what the liquor was sold for. But this is unnecessary. The triers of fact are allowed " ' to act upon probable and inferential, as well as direct and positive proof ' " (*Story Parchment Co.* v. *Paterson Co.*, 282 U. S. 555, 564, *supra*). Here the documentary proofs indicate that the purchaser was one Murry Rosen. He does not seem to have been a legitimate dealer. He was not called by the defendants; he could not be located by plaintiff. The transaction was in secret; its details are known only to the defendants. If $14,332.99 was not the resale price, defendants, who had the burden of proof, were in a position to submit credible evidence to the contrary. This, they did not do. Every presumption, therefore, should be indulged against the defendants; every unfavorable inference warranted by the evidence should be drawn against them.

The contention that the measure of damage should be the difference between the contract price and the market price is inapplicable. This rule assumed the possibility of such a purchase in the open market; it applies where, in the language of the statute, there is an " available " market and " in the absence of special circumstances showing proximate damages of a greater amount " (Personal Property Law, § 148, subd. 3). Otherwise, some other method by which the loss may be fixed must be used. (*Orester* v. *Dayton Rubber Mfg. Co.*, 228 N. Y. 134, 137, *supra*.) Here, liquor in large quantities was not obtainable in the open market. The so-called market price was purely fictitious. The contract involved the sale of popular brands of liquor. Their manufacture had been discontinued. The black market was then beginning to operate and liquor was sold in that market. The measure of damages, under the circumstances, should be the difference between the contract price and the resale price.

Accordingly, judgment is directed for the plaintiff in the sum of $3,178.82, together with costs and disbursements of this action.