OSCAR SCHISGALL et al., Plaintiffs, *v.* FAIRCHILD PUBLICATIONS, INC., Defendant.

Supreme Court, Special Term, New York County, January 13, 1955.

*George C. Shively* for defendant.

*Isadore Katz* and *David Jaffe* for plaintiffs.

MATTHEW M. LEVY, J. This is a motion by the defendant for a number of items of relief in an omnibus attack upon the complaint: (1) to compel the plaintiffs separately to state and number the causes set out in the first and in the second causes of action (Rules Civ. Prac., rule 90); (2) to strike out irrelevant matter (Rules Civ. Prac., rule 103); and (3) to dismiss the third, fourth and fifth causes of action for insufficiency in law (Rules Civ. Prac., rule 106).

In considering the first phase of the first branch of the motion, I shall state only the substance of the relevant allegations of the first cause of action. The plaintiffs allege: One of them is a well-known author of books and magazine articles, and the other is a manufacturer of women's coats and suits and is widely and favorably known. The defendant is engaged in the publication of books and periodicals in the garment, clothing and allied industries. The defendant, as publisher, entered into a written contract with the plaintiffs, as authors. A copy of the agreement is annexed to the complaint. By its terms the defendant

undertook to publish a manuscript authored by the plaintiffs on the subject of the garment industry. The plaintiffs were to receive royalties from the book sales and a share of the income arising from other publications and from theatrical, moving picture, television, radio and other exploitations. The defendant printed 5,000 volumes of the book, entitled "Seventh Avenue", and distributed the same for sale. However, on the date of publication, the defendant notified the trade that it was withdrawing the book from sale and notified the literary critics not to review it. The defendant had received orders for the book, but refused to promote or publish it, or to make copies thereof available for sale. The defendant has not paid the plaintiffs any royalties and has not accounted to them for any books sold, and the plaintiffs have also been prevented from receiving royalties and other remuneration for reasonably anticipated sales of books and theatrical, screen and broadcasting rights.

The plaintiffs demand damages, in the first cause of action, for accrued royalties on books sold, together with anticipated royalties and remuneration for other rights under the contract. Thus, this cause of action as presently pleaded is for nonpayment for what is claimed to be due upon the basis of performance (accrued royalties) and for damages upon the ground of nonperformance (expected royalties and other remuneration). They should not be joined together, as they are truly two separate causes of action (*Dailey* v. *Standard Shipbuilding Corp.*, 179 App. Div. 647). Accordingly, the motion to compel a separate statement of the causes of action now included in the first count is granted.

Now, as to the second phase of the first branch of the motion — as regards the multiplicity of causes claimed to be included in the second count. Here, too, I shall note only the substance of the material allegations. In their second cause of action, the plaintiffs repeat the allegations of the first count, setting forth the agreement and the breach (except as to anticipated royalties and remuneration), and they seek therein to recover on *quantum meruit* for work, labor and services performed in preparing the manuscript which the defendant accepted and of which it received the benefit. The sufficiency of the cause of action is not before me on this motion. Insofar as the defendant seeks to compel the plaintiffs to split the cause of action, the motion is denied. There are not two claims here — only one. The cause refers to the written agreement, but does not ask (as in the first cause of action) damages for its breach — either for earned

royalties or future remuneration. Recovery is sought for the reasonable value of services claimed to have been performed by the plaintiffs at the request of the defendant. It is in that sense — to show the defendant's request — that the written agreement between the parties is referred to in this count, and not in the sense of suing on the contract as well as aside from it in one cause of action.

I shall next consider the third branch of the motion — the application (in pursuance of rule 106) to dismiss the third, fourth and fifth causes of action for insufficiency on their face. Substantially all of the allegations contained in the first count are repeated in these causes of action. And, in view of the nature of these counts, I now want to note some of those allegations which (since the first cause of action involved damages for breach of contract only) I had heretofore omitted. These allegations are that, by the terms of the contract, all copyright and literary property in the manuscript was assigned to the defendant, and that, in the event the defendant discontinued publication of the book, it agreed to transfer, on specified terms, the work, books, copyright, type-plate, etc., to the plaintiffs; and that the plaintiffs demanded that the defendant deliver and transfer the same to them, but the defendant refused. In the third cause of action, the plaintiffs claim that " By the aforesaid acts and omissions, done by defendant wrongfully, maliciously, wantonly, intentionally, in bad faith and without just cause, the defendant converted said copyright, plates or type, bound copies of the book, and said other property in literary or other form to its own use." In the fourth cause of action, in addition to the allegations set out in the first count, the plaintiffs repeat the above-quoted language and set out a claim that the defendant " has interfered with and destroyed plaintiffs' property interest in said copyright, plates or type, bound copies of said book, and said other property in literary and other form, and plaintiffs' interest in the exploitation thereof, and has prevented plaintiffs " from procuring publication of the manuscript and selling cinema, radio and other rights. In their fifth cause of action, all of the allegations of the first count are reiterated, and, in addition, it is pleaded that the defendant's acts and omissions in withdrawing the book from publication and in refusing to offer it for sale (which were done by the defendant willfully and maliciously and without just cause) became well known among the professional and business associates of the plaintiffs, and that such acts necessarily caused

those associates to believe that the plaintiffs' work was defamatory, improper, inaccurate or otherwise unfit for publication and therefore the reputations of the plaintiffs have been injured in their respective profession and business. Compensatory and punitive damages are requested in each of these three causes of action.

Let me consider first the sufficiency of the fourth cause of action. It raises an issue which is not simple, and with respect to which there seems to be no controlling authority, but which is fundamental within the framework of the entire application now before me for disposition. The determinative question is whether, on the face of the complaint, the plaintiffs are restricted to recovery for damage arising by reason of breach by the defendant as their contracting party, or whether, as pleaded, the acts of the defendant go beyond liability for mere breach of contract and give rise to tort liability as well.

While in general even an intentional breach of contract does not create a tort liability (*Friedman* v. *Roseth Corp.*, 270 App. Div. 988, affd. 297 N. Y. 495; *Osgoodby* v. *Talmadge,* 45 F. 2d 696), the intentional infliction of injury without just cause is prima facie tortious (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79). And it seems to me that if there is a breach of duty distinct from the breach of contract — although the genesis of that duty was the contractual undertaking — tort liability may arise (cf. *Cullings* v. *Goetz,* 256 N. Y. 287, and *Rich* v. *New York Central & Hudson Riv. R. R. Co.,* 87 N. Y. 382). Is there such a breach of duty here?

The defendant argues that the plaintiffs have no legal interest or moral rights in their literary product, for the contract gave to the defendant the entire property — the copyright and the right to print, publish and sell. However, as I read the contract, even though there be an absolute assignment, there was such an assignment on the basis of the business to be done — such a transfer of rights and property to the defendant as did not denude the plaintiffs of a certain right and interest, and that that arrangement resulted in that kind of relationship that fair dealing was required between the parties. It is not the express contractual reservation of rights per se on which the plaintiffs rely, but upon the defendant's breach of the special relationship thus created — plus the defendant's intentional purpose to destroy. It is not necessary to use the magic words of " fiduciary relationship " or to hold that a " relationship of trust and confidence " was created by the contract, or to find

that defendant became a " trustee " of the copyright for the benefit of the plaintiffs (as well as of the defendant). As Chief Judge CARDOZO put it in *Wood* v. *Duff-Gordon* (222 N. Y. 88, 91) : " The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation,' imperfectly expressed ". Similarly, the special relationship here may not be specifically expressed, and yet the whole factual situation may be instinct with a duty which should be imposed by law upon the publisher.

The law implies a promise on the defendant's part to endeavor to make the book and copyright productive, since that is the very purpose of the assignment of literary rights and the correlative obligation to pay royalties (*Matter of Waterson, Berlin & Snyder Co.* v. *Irving Trust Co.*, 48 F. 2d 704). The plaintiffs had an interest in the receipt of benefits under the contract. The defendant's acts in refusing to fill orders, withdrawing the book from sale and refusing to transfer to the plaintiffs the copyright, stock and other rights, are alleged to have effectively stripped the plaintiffs of any possibility of receiving the benefit of their work. Had the defendant intentionally permitted the copyright to be infringed by others, it would thereby have subjected itself to liability as a fiduciary to the plaintiffs (*Underhill* v. *Schenck*, 238 N. Y. 7 ; *McClintic* v. *Sheldon*, 269 App. Div. 356). Others are not claimed here to have impinged upon the plaintiffs' prospects, but the charge is that the plaintiffs' contracting publisher itself has maliciously interfered with those prospects. Exculpation therefor is not found in the language of the contract. Paragraph L of the agreement, on which the defendant relies, provides for discontinuance of publication when in the judgment of the defendant the public demand for said work is no longer sufficient to warrant its continued publication. But the complaint alleges a purpose of complete frustration at the very threshold — before public acceptance was even tested — of denial of opportunity to the plaintiffs to make that test, to exploit the product of their literary labors, to rescue some recompense therefor. It seems to me that it is at least inferable, as a matter of pleading and within the allegations of this complaint, that the defendant's refusal to print, publish and sell, refusal to relinquish prints, plates and copy, and denial of opportunity to exploit, are not predicates of mere breach of contract. As I read the fourth cause of action as pleaded, the

acts complained of here have been alleged to have been done in pursuance of the single purpose to abort or destroy, and to the exclusion of legitimate purpose to advance the defendant's interests. If the defendant acted merely as a contracting party (at legal liberty perhaps to breach its agreement upon payment of damage), that is one thing. But if the defendant went further, and acted with intent to inflict injury beyond that contemplated as a result of the mere breach of contract, I would hold that the contract does not grant the defaulter immunity from tort liability. Even though the act would not be actionable in tort if the defendant " elected " to breach its contract in furtherance of its legitimate business interests, it is tortious (as well as a breach of contract) if there be no self-interest involved, but rather the sole purpose be that of injury to another.

For such conduct, as alleged, I hold that the defendant should be put to denial or explanation. I can come to no other conclusion when I bear in mind the growing tendency of the law to enforce — as near as may be — proper business ethics and fair dealing in any number of varying spheres of commercial activity (see e.g., *Matter of Rayco Mfg. Co.* v. *Layco Auto Seat Cover Center*, 205 Misc. 827; *Dolman* v. *United States Trust Co. of N. Y.*, 206 Misc. 929; *Boxill* v. *Boxill*, 201 Misc. 386, and *42nd St. Fotoshop* v. *Weimet Film Co.*, 206 Misc. 977); and when I recall the ancient policy of the law to find appropriate redress or to create a remedy when justice demands it. Rescission at law or in equity would, in my view, be inadequate redress.

As to the third cause of action, the plaintiffs, relying substantially on the same allegations, claim damages for conversion of copyright, plates or type, bound copies of books and other property in literary or other form. The defendant argues that the plaintiffs had no property or possessory right in those articles and that by the contract they assigned all literary rights to the defendant (*Kriger* v. *Macfadden Publications*, 43 F. Supp. 170; *American Law Book Co.* v. *Chamberlayne*, 165 F. 313). With this I agree; for, unconscionable as the defendant's refusal to transfer these articles to the plaintiffs may be, nevertheless there was no interference by defendant with any possessory right of plaintiffs. Inasmuch as the provisions of the written contract attached to the complaint prevail over the construction thereon pleaded by the plaintiffs, there are no facts presently alleged to show a conversion.

The plaintiffs seek to justify the conversion action on the ground that, although the literal wording of the contract would

give the defendant the option to transfer the copyright and other property, nevertheless, instinct in the contract is an understanding or obligation that the defendant is required to transfer those properties to the plaintiffs if they are in its possession. Perhaps what the plaintiffs are claiming is that, since the assignment of rights and the duty to publish contemplated the advancement of the plaintiffs' work for the production of income, the defendant's refusal to perform its obligations imposed on it the moral and equitable duty to deliver the material to the plaintiffs so that they might exploit their product.

Conversion is an ancient form of action at law which is based upon the right to possession. Possession here depends upon ownership. It cannot be held, under the terms of the contract between the parties, that the plaintiffs are entitled to possession of the articles of property created by the defendant. What the plaintiffs claim the defendant converted — such as copyright, plates, type, books, etc.— are not and never have been the plaintiffs' property, or of which the plaintiffs were entitled to possession. Under the facts alleged, however, it seems to me, that the plaintiffs were entitled to a return of their manuscript, which they created and owned and delivered to the defendant, and which the defendant by its conduct forfeited its contractual right to keep. The manuscript was something physical — in the circumstances, belonging to the plaintiffs — which the defendant could and did convert, subjecting it to a suit for its value. The motion to dismiss this cause of action is granted, but this count may be amended by eliminating paragraph " 7 " (which incorrectly pleads the obligatory tenor of the contract) and by alleging conversion of the manuscript (referred to in paragraph " 8 ") rather than the articles enumerated in paragraph " 28 " of the complaint.

In their fifth cause of action the plaintiffs seek damages for malicious injury to their reputations. The basis of the claim is that the defendant's willful, malicious acts in withdrawing the book from publication and refusing to offer it for sale became well known among the associates of the plaintiffs, and the defendant thereby " necessarily caused the business and professional associates of the plaintiffs to believe that the work of plaintiffs was defamatory, defective, improper, inaccurate, or otherwise unfit for publication ". Thus pleaded, this cause of action is insufficient. There is no allegation that the imputations claimed to have been raised by the defendant's acts were in fact false or untrue (*Rein* v. *Sun Print. & Pub. Assn.*, 196

App. Div. 873). Nor can it be assumed that these acts were " ' calculated in the ordinary course of events ' to produce the consequences averred " (*Rager* v. *McCloskey,* 305 N. Y. 75, 81, motion for reargument denied, 305 N. Y. 924). The mere statement that they caused injury to the plaintiffs' reputations or that the plaintiffs' associates were led to believe that the plaintiffs' work was defamatory or otherwise unfit for publication is nothing more than a surmise on the plaintiffs' part in the absence of pleading essential facts giving rise to liability (*Rager* v. *McCloskey,* 305 N. Y. 75, 81, *supra*).

In thus claiming that the plaintiffs' reputations in their respective profession and business were damaged by the defendant's conduct, the fifth count does not assert a theory of recovery separate and apart from the fourth cause of action but rather an additional item of injury (arising from the prima facie tort) damaging the plaintiffs in their reputations as distinguished from their property. The third cause of action being for alleged conversion of the plaintiffs' claimed physical assets, the fourth for willful and malicious tort in the destruction and prevention of income to the plaintiffs from future exploitation, and the fifth for injury to the plaintiffs' reputations, it may be that what the plaintiffs have done here is to assert these three causes of action separately, and thus endeavor to erect multiple causes as a basis for multiple recovery, or so to stretch their claim as to allege additional items of damage, and thus enlarge the possible recovery. But I express no view as to this, for the defendant has not grounded its plea for dismissal upon the claim that any one cause has been improperly split into several.

The fifth cause as pleaded is claimed to be otherwise insufficient. Standing alone as an independent cause of action, the question arises whether special damage must be alleged (*Frawley Chem. Corp.* v. *Larson Co.,* 274 App. Div. 643; cf. *Harrison* v. *Winchell,* 207 Misc. 275). I do not pass upon this matter now, in view of the fact that an amended pleading is to be served.

I shall now consider the second branch of the motion insofar as it seeks (in pursuance of rule 103) to strike from the present first cause of action set forth in the complaint certain allegations as irrelevant and prejudicial. I suppose I could postpone this determination, since this count (containing as it does two causes of action) must now be separated — one upon the basis of performance, for accrued royalties; and the other upon the basis of nonperformance, for damages. But the allegations attacked

here under rule 103 — in the light of the two prospective causes of action — are such that this branch of the motion may be disposed of now, and it may thus be possible to avoid additional labors later for counsel and court. Moreover, some of the allegations objected to are reiterated by incorporation as part of later causes of action. I shall therefore dispose of the matter now. Accordingly, the determination in that regard is as follows:

(a) The words beginning with " such as " in the second sentence of paragraph " 2 " are stricken. The allegation that the defendant is engaged in the publication of books and periodicals shows the defendant's business and is harmless. The rest of the sentence forms no necessary or material part of any cause of action.

(b) The contract does not specifically require the defendant to " promote " or " advertise " the sale of the book, but in fact leaves the province of determining the means and methods of selling to the defendant. The defendant did agree to proceed with its sale. Since the defendant was obligated to use reasonable efforts to effectuate the purposes of the contract, and since advertising and promoting the sale of the work were referred to therein, these words appear to me to be proper and permissible expressions of the contract provisions. In any event, their use in paragraphs " 3 ", " 6 " and " 12 " is not shown to be so clearly irrelevant and prejudicial as to require their being stricken from the pleading.

(c) Inasmuch as the terms of the contract referring to the transfer of work, copyright, plates, etc., must prevail over the construction thereof pleaded by the plaintiffs, paragraph " 7 " must be stricken as entirely at variance with the contract. It appears from the contract that the defendant was not obligated to transfer to the plaintiffs; it had an option to do so.

(d) Paragraphs " 10 " and " 11 " are proper. The matters pleaded therein disclose the manner and extent of the defendant's breach. They allege the defendant's sudden and complete withdrawal from performance, and also present the basis for damages for future royalties and remuneration.

(e) All of paragraph " 13 " (except for that portion of the second sentence beginning with " On " and ending with " publication ") is stricken. The custom of the trade to ship books to retail stores in advance of the publication date and the sufficiency of the defendant's notice to the stores to prevent the sale are immaterial matters, having no relevancy to the claimed

breach. The portion of the paragraph allowed to stand, however, may furnish one of the bases upon which damages might reasonably be ascertained.

(f) Except for the allegations in paragraph "14" to the effect that the plaintiffs objected to the refusal by the defendant to fill orders and to proceed with the promotion of the book (which fact is relevant as establishing a complete breach on the defendant's part), paragraphs "14", "15" and "16" generally plead matters which have no possible relevancy to the issues at this point. These allegations are not appropriate to causes of action for breach of contract. Accordingly, except as noted, the paragraphs are stricken.

(g) Paragraphs "19" and "20" are purely biographical and merely set out allegations relating to the plaintiffs' reputations in their fields of work. They are totally irrelevant to any possible causes of action for breach of contract and therefore are stricken here.

(h) In paragraphs "21" and "22(b)", the plaintiffs claim that the defendant's breach has prevented the plaintiffs from receiving royalties and other remuneration reasonably to have been anticipated. The facts pleaded in those paragraphs encompass the basis of plaintiffs' claim for accrued royalties and for damages based on unrealized revenues from future sales of books and of subsidiary rights. While "No one can compute in advance the earnings of unknown" works (*Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104, 107), that is a problem of proof, not of pleading. Inasmuch as the claims for damages are not prejudicial or irrelevant, the motion to strike as to the matters alleged in these paragraphs is denied.

The next matter to be disposed of is the second branch of the motion under rule 103 in reference to the present second cause of action which (it will be recalled) is in *quantum meruit* for work, labor and services performed by the plaintiffs. In this situation, the foregoing disposition will remain except as follows: (g) The experience, standing and reputation of each of the plaintiffs in their respective vocations have a bearing upon the value of their services as authors in the preparation of the manuscript for the book known as "Seventh Avenue". In consequence, the allegations contained in paragraphs "19" and "20" are generally relevant to this cause of action, except that the following words are stricken from paragraph "20": "received great profit from his business".

Coming now to what remains of the rule 103 branch of the motion, I hold as follows: All of the foregoing dispositions are reiterated as applicable to the fourth cause of action, except that (f) paragraphs " 14 ", " 15 " and " 16 " are generally proper as to that cause; and except that (g) paragraphs " 19 " and " 20 " are not proper as to that cause. (I have not passed upon so much of the motion based upon rule 103 as refers to the third and fifth causes of action, because I have held those counts insufficient.)

Settle order in accordance with the foregoing, with leave to plaintiffs to serve an amended complaint within twenty days after service of the order to be entered hereon, with notice of entry.