PHILIP FREUND, Respondent, *v.* WASHINGTON SQUARE PRESS, INC., Appellant.

First Department, May 8, 1973.

Joel T. Camche of counsel (Ellis B. Levine with him on the brief; Selig J. Levitan, attorney), for appellant.

Janet Fine Cotton for respondent.

KUPFERMAN, J. This action was originally instituted under the New York simplified procedure for court determination of disputes (CPLR 3031 et seq.), provided for in a publishing agreement, pursuant to which plaintiff sought specific performance for the publication of his manuscript.

The plaintiff is an author and associate professor at Fordham University. On May 3, 1965, he entered into an agreement for the publication of a work on modern drama. There was provision in the agreement for the right of the publisher to terminate within 60 days after the delivery of the completed manuscript, in which event the mutual obligations would have come to an end, and the plaintiff would have had returned to him his rejected manuscript with the right to retain the publisher's advance payment, which in this case was $2,000.

The publisher merged with Simon & Schuster and ceased publishing books in hard cover, and although the 60-day period for rejection had run, the defendant then refused to publish. The plaintiff having commenced this action pursuant to the simplified procedure, moved to compel a settlement of the statement of facts alleging an inadequate remedy at law and requesting specific performance. When the matter came on for trial, the court held that the contract was binding, and that the author had performed, and that the publisher had not served a notice of cancellation within the requisite period, but it denied specific performance and directed the return of the manuscript without the author signing a release, which had earlier been demanded by the publisher. In addition, the matter was set down for a further trial on the issue of damages.

When the trial proceeded, the plaintiff alleged three theories for monetary damages: (1) the failure of publication delayed

an academic promotion; (2) the royalties that would have been earned if publication had taken place; and (3) the cost of publication if the plaintiff made his own arrangements so to do.

Inasmuch as the plaintiff had received his promotion when he applied for it, there was no element of damage on that score. Further, royalties that would have been earned were indeed conjectural. (*Broadway Photoplay Co.* v. *World Film Corp.*, 225 N. Y. 104 [1919].) (See, also, A Radical Restatement of the Law of Seller's Damages: New York Results Compared, by Robert J. Harris, 34 Fordham L. Rev. 23, 35 [1965].) There was testimony as to the cost of publication, which ranged from $9,000 to $11,000, and the court awarded $10,000.

We are in accord that affirmance is proper, except for the measure of damage, the dissent reasoning that only nominal damage would be involved.

The specific contract clause in question provides that upon failure to publish within the period specified, section 16A, "this agreement shall terminate and the rights herein granted to the Publisher shall revert to the Author. In such event all payments theretofore made to the Author shall belong to the Author *without prejudice to any other remedies which the Author may have.*" (Italics added.) This language is quite similar to the form suggested in Entertainment, Publishing and the Arts, Agreements and the Law, by Alexander Lindey, 1:B–21.01 (Supp. 1973). (See, also, Standard Author Contract: A Survey of Current Draftsmanship, ASCAP Copyright Law Symposium No. 18 [1970], pp. 135, 161 on Publisher's Obligations, Duty to Publish.)

Is a nonrefundable advance plus nominal damages all that the author may be entitled to or may an author claim an ascertainable aspect of damage for a breach as any other breach in any other field of law would entail? (Cf. *Schisgall* v. *Fairchild Pub.*, 207 Misc. 224, 232 [Sup. Ct., N. Y. County, 1955, MATTHEW M. LEVY, J.].)

There may be an "impossibility of determining a work's value until it has been exploited." (Protecting Authors in Copyright Transfers: (Revision Bill § 203 and the Alternatives, by Frank R. Curtis, 72 Col. L. Rev. 799, 811 [May, 1972]). However, here the publisher by the terms of the agreement has acknowledged the possibility of a claim (cf. *Denker* v. *20th Century-Fox Film Corp.*, 10 N Y 2d 339) which should at least put the author in the position, similar to that of any other business contractee, that he would have been in had the defendant abided by its agreement. (13 N. Y. Jur., Damages, IV Measure and Elements of Compensatory Damages, § 38.)

Assume this was a construction contract and the defendant builder failed to complete the house or used the wrong materials. "It is true that in most cases the cost of replacement is the measure * * * The owner is entitled to the money which will permit him to complete, unless the cost of completion is grossly and unfairly out of proportion to the good to be attained. When that is true, the measure is the difference in value." (*Jacob & Youngs* v. *Kent*, 230 N. Y. 239, 244 [CARDOZO, J., 1921]). (See Cost of Correction or Completion or Difference in Value, as Measure of Damages for Breach of Construction Contract, Ann. 76 ALR 2d 805 [1961].)

Section 2–708 of the Uniform Commercial Code, Seller's Damages for Non-acceptance or Repudiation, covers the difference between the market price and the unpaid contract price, or the loss of profit. (See Uniform Commercial Code: Measure of Recovery Where Buyer Repudiates Contract for Goods to be Manufactured to Special Order Before Completion of Manufacture, 42 ALR 3d 182 [1972].) This would seem inapplicable. However, incidental damage, in addition, is covered. (Uniform Commercial Code, § 2–710.)

It is contended that the author by this decision is more than made whole, because he keeps his advance against royalties and receives the cost of publishing and then, if he does publish, and owns the books, he can sell them and gain an additional profit. This is not a valid argument.

"Under statutory sales law, however, the reseller need not account to the defaulting buyer for any profits over and above the seller's claim." (The Manufacturer's Right to Resell Patented and Copyrighted Goods by John A. Friedman, 38 N. Y. U. Law Rev. 948, 966 [1963].)

The determination at Trial Term in adopting the cost of publication as the proper measure of damage should be affirmed, with costs and disbursements.

LANE, J. (dissenting). The plaintiff in this action had entered into a contract with the defendant publishing firm in 1965. The defendant was to publish a manuscript submitted by the plaintiff and plaintiff received a $2,000 cash advance. This advance was nonrefundable. The defendant failed to publish.

Plaintiff, who teaches at the college level, testified that he had written the book allegedly with the hope of obtaining a promotion to the position of associate professor. He had published numerous books in the past. However, according to testimony adduced at the trial, promotion was not by any means a certainty, nor would it hinge solely upon publication of this book. In fact,

the testimony of the department chairman indicated that factors bearing on promotion also included the degrees held by the applicant, the number of years with the department and ability as a teacher.

It is interesting to note that the plaintiff did not formally apply for promotion until the fall of 1969 and that his application was granted even though the book had not yet been published.

A trial on the issue of damages was ultimately held. The court found that plaintiff was damaged in the amount of $10,000. This represented the cost to the plaintiff should he wish to publish the book on his own.

This is not an appropriate measure of damages. The contract itself speaks to remuneration of the defendant by payment of royalties to be computed on the basis of sales of the finished book. No mention was made in the contract with the publisher that the book was to be a basis for promotion of the plaintiff. The sole remuneration alluded to in the contract was the distribution of royalties. A failure of plaintiff to obtain a promotion, therefore, is not a foreseeable consequence of the publisher's breach of contract (cf. *Coppola* v. *Kraushaar,* 102 App. Div. 306).

Furthermore, a comparison of the present work of the plaintiff with other books which he already published as a measure of monetary damage would be incapable of evaluation because of the many variables involved such as different subject matter and differing dates of publication (cf. *Broadway Photoplay Co.* v. *World Film Corp.,* 225 N. Y. 104; *Carnera* v. *Schmeling,* 236 App. Div. 460).

Where no means are available to ascertain damages with any reasonable degree of certainty, then plaintiff is relegated to an award of nominal damages only (*Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205; *Bernstein* v. *Meech,* 130 N. Y. 354, 359; *Walter Janvier, Inc.* v. *Baker,* 229 App. Div. 679; cf. *Brady* v. *Erlanger,* 188 App. Div. 728, affd. 231 N. Y. 563; *American Harley Corp.* v. *Irvin Ind.,* 27 N Y 2d 168, 181).

In the case of *Hewlett* v. *Caplin* (275 App. Div. 797, affd. 301 N. Y. 591), the publishing agreement entered into provided for payment of royalties based on retail sales of the book ultimately to be published. The plaintiff sued for his " share " when the defendant breached the contract. The court stated that " Though a jury might be warranted in finding that there existed between the parties an agreement complete in its essential terms and a breach thereof by defendant, the record is barren of any proof of damage ". It concluded that " The verdict for the plaintiff in the sum of $9,000 as damages is wholly speculative and without any basis in the evidence."

In sum, compensatory damages cannot be awarded on the surmise that one *might* have obtained a promotion or *might* have sold sufficient books to be entitled to royalties.

The quantum of damage in a construction contract alluded to by the majority is capable of measurement. However, damages from the nonsale of an unpublished book—where the contract speaks of the author's remuneration in terms of royalties — are clearly unascertainable.

Accordingly, the judgment below should be modified to the extent of reducing the award to 6 cents nominal damages and otherwise affirmed.

McGIVERN and CAPOZZOLI, JJ., concur with KUPFERMAN, J.; LANE, J., dissents in an opinion in which STEVENS, P. J., concurs.

Judgment, Supreme Court, New York County, entered on March 7, 1972, affirmed. Appellant shall recover of respondent $60 costs and disbursements of this appeal.